## Suderman & Dolson v. Harman Kriger.

### Decided March 26, 1908.

**1.—Master and Servant—Common Law Liability.**

The Legislature of this State has not amended or in any manner modified the common law rules adopted by the courts for determining the liability of a master to his servant arising from the negligent conduct of a fellow servant in any department of labor, except that pertaining to the operation of railroads.

**2.—Master and Servant—Negligence of Vice-Principal.**

A master is liable for the negligent acts of his vice-principal resulting in injury to one under his authority when the latter is engaged in the performance of some service belonging to the grade of duties imposed upon a fellow servant of the injured party, and this is true whether the service so performed by the vice-principal is a part of his common employment or some act of his, out of his regular line of work, which he voluntarily undertakes to perform.

**3.—Same—Vice-Principal—Fellow-Servant.**

The foreman of a group of workmen may be the vice-principal as to those under him, and at the same time be the fellow servant of other employes occupying another grade, lower in rank, in a different department of the service of the same master.

**4.—Same—Negligence of Vice-Principal.**

If the negligence of a vice-principal results in injury to any of those under his control, and to whom he sustains that relation, his grade and rank in the service, and not the particular act of negligence, will determine the liability of the master. On the other hand, if his negligence results in injury to one not under his control, and to whom he does not sustain the relation of vice-principal in fact, although the injured party may be of a lower grade in the service of the master, yet the liability of the master must be determined by the character of the act which was negligently done, and not by the rank of the servant who did it. In this latter case the master would not ordinarily be liable.

**5.—Charge—Intimation of Opinion—Conflicting Evidence.**

There being no dispute as to the particular employe who was operating a winch at the time plaintiff was injured, but the evidence being sharply conflicting as to whether or not such employe was a vice-principal of the defendant, it was error for the court to charge the jury that the plaintiff could not recover if the jury found that his injuries "were not caused by the negligence of the defendants or their vice-principal in operating the winch," because the same might be taken as an intimation that, in the opinion of the court, the man who did operate the winch was a vice-principal.

**6.—Personal Injuries—Pleading—Special Exception.**

In a suit for personal injuries alleged to have been caused by the negligent operation of a winch, the plaintiff alleged "the regular winchman was not operating the winch, but was temporarily absent from duty, and the foreman, who was vice-principal, was himself attempting to operate the winch." Held, not subject to a special exception on the ground that it failed to state the name of the foreman referred to. But said pleading was subject to a special exception on the ground that it merely stated that the foreman was vice-principal, without in any manner detailing the facts which would constitute him in law the vice-principal in this particular instance.

**7.—Vice-Principal—Definition.**

The term "vice-principal" is generally understood by the courts as indicating a particular kind of a representative of the master—one having the authority to employ and discharge servants under his control.

**8.—Pleading and Proof—Evidence without Pleading—Error.**

Where, in a suit for personal injuries, evidence is introduced of injuries not alleged in the pleading, and the charge of the court authorizes a recovery for such injuries, the judgment must be set aside, even though the evidence was admitted without objection, and the amount of damages found by the jury was not more than sufficient to compensate for the injuries proven as alleged.

**9.—Remittitur—Practice.**

It is only in those cases where the excess in a verdict is capable of exact ascertainment by mere calculation from established facts that such excess can be cured by remittitur.

**10.—Charge—Burden of Proof.**

Upon an issue of contributory negligence, the charge of the court should be so framed as to permit the jury to take into consideration all the evidence introduced, whether by the defendant or the plaintiff, in determining the issue.

Appeal from the District Court of Galveston County. Tried below before Hon. Lewis Fisher.

*Baker, Botts, Parker & Garwood, James B. & Charles J. Stubbs* and *C. R. Wharton,* for appellants.

*Marsene Johnson* and *J. C. Walker,* for appellee.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted in the court below by the appellee to recover damages for personal injuries sustained by him in October of 1906, while employed by the appellants. The appellants were at that time a partnership in the business of contracting as stevedores, and as such employed a large number of men—among them, the appellee—who were engaged in loading an outgoing steamer with goods and merchandise. The appellee claims that he was injured by reason of the negligent operation of what is called the "winch," by a man by the name of Krimpain, who was at the time a vice-principal of appellants. The winch is a windlass located upon the upper deck of the vessel; around the drum of this windlass a rope by means of which freight is elevated or lowered, is wound. The winch, or windlass, was propelled by steam, and it was the duty of the winchman, or winch tender, to operate it by means of a lever, the steam power being applied, or cut off, or regulated by the use of this lever. On the deck immediately below the upper deck where the winch was located, the appellee, Kriger, and another workman with him, were stationed at an open hatchway; and the merchandise that was being handled had been stored upon this second deck, and was being lowered to the bottom, or hold, of the ship. Kriger was known as a "gangwayman." It was his duty to stand by the open hatch and take the sling, or ropefall, and spread it. This sling was a rope about four or six feet in length, which was fastened to a hook on the end of another rope, and this last rope was attached to the winch, or windlass. Appellee would take the sling, or short rope, off of the hook and stretch it out on the deck beside him, and his co-workman would wrap it around a bale of merchandise; and then a hook on the end of a larger rope would be fastened into the sling around the merchandise, and the gangwayman

would give notice to the winchman above, who would apply the power, and the merchandise would be lifted into the open hatchway and lowered into the bottom of the ship. After the merchandise was lowered it appears that a signal was given to the winchman, and the rope was elevated so that the same process could be repeated. The testimony shows that it was the appellee's duty, when the hook to which the sling was fastened reached the deck where he was located, to take hold of it and to give the signal to the winchman either to lower or elevate the hook preparatory to attaching another load. On this occasion the testimony shows that the appellee caught the sling, or attempted to catch it, and that he gave the winchman the signal to slacken the rope so that the hook would come lower; that the winchman undertook to obey that signal, but, through a mistake of some kind, elevated the rope, taking it in an opposite direction from that indicated by the signal. Appellee says that he had caught the sling with one hand, and that his sudden and unexpected elevation jerked him about a foot off of the deck, swung him over the hatch, and caused him to fall twenty-seven feet to the bottom of the ship. There was other testimony tending to corroborate that of the appellee; while there was some testimony on the part of the appellants tending to show that the appellee reached out as if undertaking to grab the rope, lost his balance, and fell. At the time appellee was injured, the regular operator of the winch was absent temporarily for the purpose of getting a drink of water. Krimpain, the foreman of the gang to which the appellee belonged, took the place of the absent winchman, and was operating the winch at the time the appellee was injured. The testimony is conflicting as to whether or not Krimpain had the right to employ and discharge those over whom he acted as foreman. This issue of fact was submitted by the court to the jury, and was found against the appellants.

The fall sustained by the appellee resulted in serious bodily injuries, for which he recovered damages amounting to the sum of $5,000. The appellants prosecute this appeal and make numerous assignments of error, the first of which is, that the testimony was insufficient to sustain the verdict of the jury in finding that Krimpain was the vice-principal of the appellee at the time the latter was injured, and that the court erred in submitting that issue to the jury. In view of the fact that the case is to be reversed for other reasons, we will not discuss the sufficiency of the testimony upon that particular issue.

After the taking of the testimony was concluded, the appellants requested the court to instruct the jury to return a verdict in their favor, assigning various reasons therefor This requested instruction was based mainly upon the fact that the evidence showed that at the time the accident occurred the winch was being operated by Krimpain, the alleged vice-principal, and that in doing so he was merely performing the duties of an ordinary fellow-servant of the appellee; that even if he were a vice-principal in other respects, the character of the act he was performing was such that in its performance he was acting only as a fellow-servant of the appellee. There are numerous other assignments of error raising practically the same question, all presented from different standpoints of the proceedings of the

court below, but based upon the same legal proposition. The proposition relied upon seems to be this: That the master is not liable for the negligent acts of his vice-principal when the latter is engaged in the performance of some service belonging to the grade of duties imposed upon a fellow-servant of the injured party, and that this is true whether the service so performed by the vice-principal is a part of his common employment or some act of his out of his regular line of work, which he voluntarily undertakes to perform. In other words, it is urged that in every case the true test for determining whether or not the rule of fellow-servant applies, is to be found in the character of the act performed, and not in the grade or rank of the servant performing it.

The Legislature has not seen fit to amend or in any manner modify the common law rules adopted by the courts for determining the liability of a master arising from the negligent conduct of co-employes in any department of labor except that pertaining to the operation of railways. We are thus left for guidance solely to such general rules as may be deduced from the principles announced in the adjudicated cases. We find there is a lack of harmony among the different courts in the different jurisdictions, and also in the decisions of the same courts upon different states of facts in the same jurisdiction. However, no matter what may be the deductions to be drawn from the numerous and conflicting rules adopted by the appellate courts in other jurisdictions, we think our own Supreme Court has indicated, with reasonable certainty, a rule by which to determine this particular question in this case. That rule is not in accord with the position assumed by the appellants. (Young v. Hahn, 96 Texas, 99; Missouri Pac. Railway v. Williams, 75 Texas, 7.) The case of Galveston, H. & S. A. Railway v. Smith, 76 Texas 611, decided by the Commission of Appeals, appears to be somewhat in conflict with other decisions of the Supreme Court upon this subject; but it will be observed that this decision did not meet the unqualified approval of the Supreme Court, and the language used has been expressly limited by subsequent decisions of that court, as well as by the order adopting the decision in that particular case.

In this State we think the rule that the relation between the injured party and the servant inflicting the injury is to be determined from the character of the act, and not the grade of employment occupied by the negligent servant, is to be taken subject to certain limitations and qualifications. A foreman of a group of workmen may be the vice-principal of those under him and at the same time the fellow-servant of other employes occupying another grade, lower in rank, in a different department of the service of the same master. If the negligence of the vice-principal should result in an injury to any of those under his control and toward whom he sustains that relation, his grade and rank in the service, and not the particular act of negligence, will determine the liability of the master. While, on the other hand, if his negligence results in injury to one not under his control and to whom he does not sustain the relation of vice-principal in fact, although the injured party may be of a lower grade in the service of the master, yet the liability of the master

must be determined by the character of the act which was negligently done, and not by the rank of the servant who did it. In this latter instance if the act was such as might fall within the ordinary duties of a fellow servant, and not partake of the character of that duty which the master, as such, owes to all of the servants in his employ, the master is not liable for the resulting damages. We therefore overrule all those assignments of error based upon that proposition of law.

The seventh assignment of error complains of the following portion of the charge of the court: "You are further charged that the plaintiff, Kriger, when he entered the employment of the defendants, assumed the risks and dangers incident to the service in which he was engaged at the time, and if you believe from the evidence that he was injured and damaged as claimed by him in his petition, and that such injuries and damages were the result of ordinary risks and dangers incident to his employment, and were not caused by the negligence of the defendants or their vice-principal in operating the winch, you are charged that plaintiff can not recover." It is contended that this instruction is on the weight of the evidence, and we think the contention is correct. Whether or not Krimpain was the vice-principal of the appellant at the time this injury was inflicted, was a closely contested issue of fact, and one upon which the testimony was in sharp conflict. It was therefore exceedingly important that the court should refrain from using any expressions which might be construed by the jury as an intimation of his view concerning that relation. The testimony is uncontradicted that Krimpain was the man who operated the winch at the time the injury was inflicted upon the appellee. To tell the jury that if the injury was not caused by the negligence of the defendants or their vice-principal in operating the winch, the plaintiff could not recover, is susceptible of being construed, in the light of the evidence, as an intimation that in the opinion of the court the man who did operate the winch was a vice-principal. Whether or not Krimpain was the vice-principal in this particular instance was a mixed question of law and fact, and should have been submitted to the jury under appropriate instructions.

Error is assigned to the refusal of the court to sustain a special exception to the following portion of the appellee's original petition: "The regular winchman was not operating the winch, but was temporarily absent from duty, and the foreman, who was vice-principal, had gone up on the deck of the vessel and was himself attempting to operate the winch." This is followed by charges of negligence concerning the operation of the winch, which, it is alleged, resulted in the appellee's falling and sustaining the injuries complained of. The appellants urge two objections to this portion of the petition. One is that it fails to state the name of the foreman referred to; and the other, that it merely states that the foreman was vice-principal, without in any manner detailing the facts which would constitute him in law the vice-principal in this particular instance. The petition of the plaintiff should be sufficiently specific in its allegations of the matters relied upon for recovery, to apprise the opposite party

of the facts he will be called upon to meet in his defense. It is not required, however, that the pleader should descend into that minuteness of detail in alleging matters of fact that is required of a witness in giving testimony upon the stand; but in all cases the pleader should state facts as distinguished from his legal conclusions. We do not think in this case it was necessary, in order to meet the special objection urged, that the name of the foreman referred to should have been given in appellee's petition. The identity of that individual was sufficiently indicated by the averments of the plaintiff in giving the time and the place and the group of men over whom he was foreman. This, we think, was ample to enable the appellants to ascertain which of their servants was referred to by these allegations.

But the other objection, that it was alleged that the foreman was vice-principal without stating the facts which constituted him such, is of a more serious nature. The term "vice-principal," it is true, has a well defined legal meaning, and is perhaps generally understood by the courts as indicating a particular kind of a representative of the master—one having the authority to employ and discharge servants under his control. Our statute requires, among other things, that "the petition shall set forth clearly the names of the parties and their residences, if known, with a full and clear statement of the cause of action," etc. This means that the petition must state facts, and not conclusions of law nor the evidence of the facts. What are legal conclusions and what are facts within the meaning of this rule is sometimes difficult to determine, and there appears to be some inconsistency in the holdings of our courts upon that subject. The group of facts which must have been embodied in the expression to which this special exception is directed, in order to be construed as averring a cause of action against the appellants is this, that the foreman was the representative of the appellants in the employment in which he and the appellee were engaged at the time of the injury, and that he also had the power to employ and discharge the appellee. Allegations which fell short of the measure of fullness requisite to include those facts, would fail of stating a cause of action in this case. If it be admitted that the inference of those facts might be drawn from the general averments of the petition, it must also be conceded that when a special exception is interposed the appellants have the right to a more specific statement of the facts. The general averments of the petition are also susceptible of a construction that would not impart liability of the appellants for the particular injury inflicted. For instance, it is said that "the foreman, who was also vice-principal," was operating the winch. This foreman may have been a vice-principal over some other employes of the appellants not including the appellee, and the allegations would be literally true as pleaded, yet no liability would be alleged without the inference that he also had the right to employ and discharge the appellee. It would not have been a statement of the evidence if the pleader had alleged the authority claimed to have been delegated by the masters to the foreman which would

constitute him a vice-principal ·as to Kriger, but a statement of the facts.   There are many instances where this form of pleading would not be necessary in stating the representative character of an agent in an action against the principal, as when the agent, or representative character, is only incidentally involved.` But in actions against the master, or principal, where the liability must rest primarily upon the possession by the agent or representative of a special power, or species of authority, which would in law make the principal or master liable for his negligent conduct, we think, in response to a special exception, the pleader should be required to state the facts constituting this special representative character. The material inquiry in this case was whether or not Krimpain, the foreman, had the power to employ and discharge those under him, including Kriger; and the liability of the appellants depends upon a finding that he had such power.   The facts when stated might have justified the general allegation that Krimpain was a vice-principal, and yet have fallen short of showing that appellants would be liable for injuries negligently inflicted ·upon the appellee under the rules of *respondeat superior.*   The general allegations were not sufficiently specific in law to apprise the appellants of the particular facts they would be called upon to meet, and the special exception should have been sustained.

The seventeenth assignment of error objects to the following portion of the general charge of the court: "If you find a verdict for the plaintiff, the measure of its damages, if any, would be such sum as you may believe from the evidence is proportionate to the injuries plaintiff may have sustained, if any, and in this regard you may take into consideration the loss of time, if any, he has sustained, from the date of his injuries up to the present time, and in measuring the damages he has sustained, if any, you may take into consideration the physical and mental pain he has suffered, if any, and if you find from the evidence that plaintiff's injuries are permanent and lessen his capacity to earn money in the future, you may find for him such additional sum as will fairly compensate him, if paid at the present time, for his lessened capacity to earn money in the future."   The plaintiff alleged the following injuries: "That the flesh from his left eye was cut open and gashed; that the wrists of both of plaintiff's arms were broken, causing the bones of the broken ˙wrists to protrude from the flesh; that one of his ribs was broken; which injuries caused plaintiff to suffer much pain and agony and loss of blood, and inflicted upon plaintiff serious and permanent ˙injuries to arms, wrists and eyes."   The testimony of Dr. Stafford, the physician who attended the plaintiff's injuries, was as follows: "He was first brought to the Sealy Hospital, and was suffering very badly from concussion of the brain.   He was in an unconscious condition; bone fracture of one wrist and backward dislocated fracture of both wrists, badly cut over the eye and bruised in the back, and was unconscious for about four days."   There can be no doubt that the charge of the court allowed a full recovery for all the injuries which the testimony showed the appellee had sus-

tained and suffered by reason of his fall. The testimony, which appears to have been offered without objection, showed that the appellee at the time he was brought to the hospital was suffering with concussion of the brain and was bruised in the back. In both of these particulars the testimony showed injuries not alleged in the pleadings of the appellee, and for which he was not entitled to recover under the then state of his pleadings; and this is true even though the evidence of those injuries was admitted without objection. It may be that the jury did not take these additional injuries into account, or they might have given him the same sum even had the proof of injuries been confined to those pleaded. But the charge of the court authorized them to do more. The verdict was general, and we can not say that such additional injuries were not also considered by the jury in estimating the total amount of damages awarded to the appellee. It is a fundamental rule that damages recovered can not exceed those pleaded. This portion of the charge, we think, was error. (International & G. N. Railway v. Shaughnessy, 81 S. W., 1026; City of Dallas v. Jones, 93 Texas, 47; Dallas Consol. Electric St. Ry. v. English, 42 Texas Civ. App., 393.) In reply to this assignment of error the appellee contends that the small amount allowed for the injuries was not more than sufficient to compensate for those proven as pleaded. That is not for us to say.

Appellee offers to remit any excess which the court may determine should exist by reason of the error of the court below in the charge complained of. The verdict in this case is not of the class where error can be cured by remitting the excess. There is no known rule by which courts or juries may estimate and fix the exact sum which should be awarded in cases of this sort as compensation for injuries. In fact, we can not say that the sum allowed is excessive even for the injuries pleaded and proven. It is only in those cases where the excess, if any, is capable of exact ascertainment by mere computation from established facts, that such errors can be cured by a remittitur.

The last assignment of error complains of the charge of the court upon the burden of proof to show contributory negligence. The court placed that burden, without any qualification, upon the defendants in this case. It might be that as applied to the facts of this particular case there were no just grounds of complaint at this charge. But a general charge placing the burden of proof to show contributory negligence upon the defendants, has been held by our Supreme Court to be susceptible of the construction of imposing the duty of discharging that burden by the evidence offered by the defendants alone. (Texas & Pac. Ry. v. Geiger, 79 Texas, 21; Texas & Pac. Ry. v. Reed, 88 Texas, 439; St. Louis S. W. Ry. v. Martin, 26 Texas Civ. App., 231; Gulf, C. & S. F. Ry. v. Albright, 7 Texas Civ. App., 21.) In view of this holding, the better practice in such cases would be to guard against such a possible construction, and so frame the charge upon that issue as to permit the jury to take into consideration all the testimony admitted, both of the plaintiffs and of the defendants, in determining whether or not contributory negligence has been shown.

The remaining assignments of error are overruled. But for those indicated and discussed the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*