THE LANTRY-SHARPE CONTRACTING COMPANY v. W. E. McCRACKEN.

Decided February 11, 1909.

**1.—Master and Servant—Vice-Principal.**

One having authority from the master to employ and discharge other servants is, as to them, a vice principal; but one having merely authority to direct them in their work is such vice principal only in such acts of direction; and as to acts done merely in laboring with them he is a fellow servant for injury by whose negligence they cannot recover under the common law rule.

**2.—Same—Negligence of Fellow Servant—Charge.**

An instruction denying a servant the right to recover for injuries if they were proximately caused by negligence of a fellow servant is correct, in the absence of evidence tending to show that negligence of one acting as a vice principal also proximately contributed to cause the injury.

**3.—Same.**

Evidence considered and held to show no negligence contributing to cause the injury on the part of defendant's foreman in directing the work which would render improper a requested charge relieving defendant from liability if it was proximately caused by negligence of fellow servants.

**4.—Negligence—Pleading.**

A general allegation of negligence, followed by specification of particular acts or omissions, will, it seems, be construed as limited to the matters specified unless an intention not to so limit it appears.

Appeal from the District Court of Bell County. Tried below before Hon. John M. Furman.

*Harry P. Lawther* and *Arthur M. Monteith,* for appellant.—Bruce was a fellow servant. Houston Ice & Brewing Co. v. Pisch, 77 S. W., 1047; Young v. Hahn, 96 Texas, 99; Cullen v. Norton, 126 N. Y., 1; Donovan v. Ferris, 128 Cal., 48; Wiskie v. Montello Granite Co., 111 Wis., 443; Ft. Worth & Denver Ry. Co. v. Ramp, 70 S. W., 569; Galveston, H. & S. A. Ry. Co. v. Smith, 76 Texas, 611; Peschel v. Chicago, M. & St. Paul Ry. Co., 62 Wis., 345; Maughmer v. Behring, 19 Texas Civ. App., 299.

The question as to whether the servant through whose negligence the injury is claimed to have been inflicted is to be regarded as a fellow servant of the injured servant, or as the vice-principal of the master, depends not upon the rank or grade of the servant inflicting the injury, nor on the relative rank or grade of the two servants with respect to each other, but upon the character of the act which the servant inflicting the injury was doing at the time. 4 Thompson, Neg., secs. 4917-4918. Superiority in rank is not a controlling test nor the fact that the one has the right to direct and control the work of the other. 4 Thompson, Neg., sec. 4938, and authorities cited. Bruce at the time was performing an act of service, not an act of the master or vice-principal. Authorities cited, supra.

The rule is that it is the duty of the master to provide a reasonably safe place and structure for his servants to work upon; but this obligation does not compel him to keep a building which they are employed in erecting in a safe condition in every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants. Or, differently stated, this obligation has no reference to the safety or condition of the thing the servant is employed to repair or complete. Armour v. Hahn, 111 U. S., 313; Texas & P. Ry. Co. v. Hahn, 93 Texas, 651; Carlson v. Oregon Short Line & U. N. Ry. Co., 28 Pac., 497; Porter v. Silver Creek & M. Coal Co., 84 Wis., 424; City of Minneapolis v. Lundin, 7 C. C. A., 344; Gulf, C. & S. F. Ry. Co. v. Jackson, 12 C. C. A., 507; Finalayson v. Utica Min. & Mill. Co., 14 C. C. A., 492; Allen v. Galveston, H. & S. A. Ry. Co., 14 Texas Civ. App., 344; Direct Navigation Co. v. Anderson, 29 Texas Civ. App., 65; Richardson v. Anglo-American Provision Co., 72 Ill. App., 77; 1 Labatt, Master and Servant, 611-612, sec. 269; 2 Id., 1722, sec. 588; Hollerhan v. Union Iron and Foundry Co., 35 S. W., 260.

The master is under no obligation to warn: (1) Where the danger is apparent, obvious, and open to observation; (2) where the servant has represented himself to be competent and the master is ignorant of his inexperience. (1) Gulf, C. & S. F. Ry. Co. v. Wittig, 35 S. W., 857; International & G. N. Ry. Co. v. McCarty, 64 Texas, 632; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 159; Houston & T. C. Ry. Co. v. Strycharski, 6 Texas Civ. App., 555; Thompson v. Chicago, M. & St. P. Ry. Co., 14 Fed., 566; (2) Missouri Pac. Ry. Co. v. Watts, 63 Texas, 549; International & G. N. Ry. v. Hester, 64 Texas, 401; Ciriack v. Merchants Woolen Co., 151 Mass., 152; Goodnow v. Walpole Emery Mills, 146 Mass., 261; Perry v. Old Colony Co., 164 Mass., 296; Hathaway v. Ill. Cen. Ry. Co., 92 Iowa, 337; Junior v. Missouri Electric Light & P. Co., 127 Mo., 79; Yeager v.

Burlington, C. R. & N. Ry. Co., 93 Iowa, 1; Truntle v. North Star W. Mill Co., 57 Minn., 52; Cenielewski v. Mollenhauer Sugar Ref. Co., 11 App. Div., 111; Wagner v. Jayne Chemical Co., 147 Pa., 475; Cole v. Chicago & N. W. Ry. Co., 71 Wis., 114; Paule v. Florence Mining Co., 80 Wis., 350; Dougherty v. West Superior Iron & S. Co., 88 Wis., 843; Buzdell v. Laconia Mfg. Co., 48 Me., 113.

*J. B. McMahon,* for appellee.—Appellant having placed Bruce in charge of the construction of the rock-crusher plant, with authority to manage, control and direct appellee and other workmen assisting him in the erection of said structure, as to their work thereon, and having placed said workmen under him with instructions to obey his orders, he was, therefore, a vice-principal, and not a fellow servant of appellee and the other workmen. McCracken v. Lantry-Sharpe Contracting Co., 101 S. W., 520; Abilene Cotton Oil Co. v. Anderson, 91 S. W., 607; Bering Manuf. Co. v. Femelat, 35 Texas Civ. App., 36; Waxhachie Cotton Oil Co. v. McLain, 27 Texas Civ. App., 334; M. & P. Oil Co. v. Burns, 72 S. W., 626; Mexican Nat. Ry. Co. v. Finch, 27 S. W., 1028; Gunter v. Graniteville Man. Co., 18 S. C., 270, 44 Am. Rep., 573.; Hunt v. Desloge C. Lead Co., 79 S. W., 710; Bain v. Irwin, 72 S. W., 522.

It matters not that Bruce was performing an act of service at the time of the accident. If a vice-principal in the performance of an act of service for the master negligently causes an injury to another servant of the master assisting him in the performance of such act, the master is liable. Missouri, K. & T. Ry. Co. v. Smith, 31 Texas Civ. App., 332; St. Louis S. W. Ry. Co. v. Smith, 5 Texas Civ. App., 816; Roberts v. Felder Salt Works, 72 S. W., 618; Donnelly v. Aida Min. Co., 77 S. W., 130.

It was not necessary for appellee to plead specially that "the sheave block being caught on the central upright timber, and Bruce knowing the same gave an order to pull, and that this order was the proximate cause of the injury;" these facts could be established under his general allegations of negligence. Texas & P. Ry. Co. v. Meeks, 74 S. W., 329; Ry. Co. v. Brinker, 68 Texas, 502; Gulf, C. & S. F. Ry. Co. v. Smith, 74 Texas, 273; Railway Co. v. Crawford, 9 Texas Civ. App., 248.

Said special charge ignores the right of appellee to recover provided the injury was the result of the concurring negligence of appellant and the men pulling on the tag lines. Missouri, K. & T. Ry. Co. v. Rains, 40 S. W., 635; Sincere v. Union Compress & Warehouse Co., 40 S. W., 326; Texas & N. O. R. Co. v. Lee, 32 Texas Civ. App., 23; Ray v. Pecos & N. T. Ry. Co., 88 S. W., 466; Galveston, H. & S. A. Ry. Co. v. Sweeney, 14 Texas Civ. App., 216; Missouri, K. & T. Ry. Co. v. Walden, 66 S. W., 584; International & G. N. R. Co. v. Zapp, 49 S. W., 443.

HODGES, ASSOCIATE JUSTICE.—In June, 1905, the appellant was erecting what is termed a "rock-crusher plant" at its quarry in Bell County, in and about which the appellee was at the time employed as a laborer. During the progress of the work a heavy piece of timber

which had been placed in an upright position was pulled over, fell upon the appellee's leg, and caused the injuries for which he instituted this suit and recovered a judgment.

The structure is thus described by one of the witnesses, under whose direction it was being built: It consisted, when completed, of a square framework about thirty by forty feet. The sides were built of what were called "bents" placed one upon the other. These bents were constructed as follows: Upon a concrete foundation was laid a heavy sill thirty feet in length, twelve by twelve inches, upon which were fastened three upright timbers twelve by twelve, one at each end, forty feet in length, and one in the center thirteen feet twelve inches long. These were fastened to the sill by temporary angle-braces two by four inches in dimension, nailed on with spikes. The central upright timber was let down in the sill two inches, and fastened at the base with a dowel-pin. Permanent braces six by ten inches were then put in on each side of the central upright timber, reaching from its top to the sill, and resting against the ends of the upright timbers. Upon the top of this central upright timber, after being permanently braced, was then placed a horizontal piece of timber twelve by twelve inches, reaching across the bent, forming a cap. When completed, this much of the structure was called a "bent." Another bent was placed above this by a similar process. The third section was being similarly constructed; and at the time the appellee, McCracken, met with his accident the central upright timber had been placed in position above the second bent and fastened with a dowel-pin five or six inches long at the base, and was supported by a temporary right angle brace on the north side and the permanent brace on the south side. As the central upright piece then stood in the third bent, it was permanently braced on one side and temporarily braced on the other. The other permanent brace had been hoisted by the derrick. Two "tag lines," as they were called, were fastened to this piece of timber; the end of one line being held by a gang of men on the ground on the north side of the structure, and the other by a gang of men on the ground to the west and at right angles with that side of the structure. It was the business of the men on the ground holding these tag lines to assist in placing the brace in position. Those on the north had their line tied to the lower end of the timber, and it was their business to pull the same in position towards the north end. Those on the ground to the west had their line tied to the opposite end of the timber, to which end was also fastened the rope of the derrick, and it was their business to keep the timber being raised from coming in contact with or striking the side of the structure as it was pulled up by the derrick. The following diagram will aid in more fully understanding the structure:

X   *Where McCracken sat.*

Y   *Where Bruce stood*

Z   *Where Fulwiler stood.*

E   *Sheave Block.*

The testimony shows that Roettiger was the superintendent and general manager of this work, and was present on the ground. But there is some dispute as to whether he was at the time observing the work and the situation of the machinery when the accident occurred. John Bruce was an expert mechanic, and was employed as a foreman to look after the details of erecting this plant. The undisputed testimony shows that the accident occurred under the following circumstances: The last brace on what was called the "third bent" had been raised by the derrick to a position in which it was to be pulled in place by the men standing on top of the crosspiece forming the capsill of the second bent. Standing upon that crosspiece were the appellee, John Bruce, the foreman, and John Fulwiller, a laborer. The appellee says that Bruce had told him to get up and assist them in putting the timber in place. At the time of the accident he was seated near the north end of the cap-sill on the top bent, and was

holding on to the brace at that end and also to the tag line, which was tied around the brace. The men holding to the tag lines, together with those upon the structure, had made an effort to pull the brace into position, but failed; and while Bruce was hesitating about what to do next, McCracken suggested that they make another pull and possibly the timber might be "landed." Bruce immediately gave the order to "pull." The men on the north tag line pulled concertedly with Bruce, the appellee and Fulwiler; but those who were holding the tag line on the west and whose duty it was to keep their line taut so as to prevent a collision between the brace and the side of the structure, failed to pull on their line, and the sheave-pin, which projected from a portion of the machinery fastened to the upper end of the brace, caught behind the upright timber; and as the other men pulled, the temporary brace which supported it gave way, the upright timber was pulled over, fell on the appellee's foot and leg, and produced the injury. Bruce was standing between appellee and this upright at the time, and Fulwiler was on the opposite side. Bruce saw the timber start to fall, called to the men to look out, and escaped injury by getting around behind the upright on the north side. The appellee remained in his position, except that he put his head and part of his body behind the end timber, leaving his foot and leg exposed.

The specific charges of negligence alleged in the plaintiff's petition appear to be (1) the insecure fastening and bracing of the timbers; (2) negligently bringing the brace which was being raised by the derrick into contact with the upright timber; (3) bringing up the brace on the outside of the structure instead of the inside; (4) failure to warn appellee of the defective bracing and danger of the work.

The court gave the following as a portion of its general charge:

"You are charged that any agent or employe who is invested by his employer with authority over other employes and to superintend, control, or command other servants or employes and with the authority to direct any other employe in the performance of any duty of such employe are vice-principals of such employer and are not fellow servants, and such employer would be responsible for any such damages accruing from the negligence of such vice-principal."

This charge is not a correct statement of the rule for determining when the relation of vice-principal exists toward other employes.

Neither do we think the rule is properly stated in the special charges requested by the appellant and refused by the court. In the charge given, the authority to manage and control the movements and conduct of other servants in the course of their employment is made the exclusive test by which to determine whether a mere foreman is a vice-principal; while in the special charges requested by the appellant this test is made to depend upon the right to employ and discharge subordinate employes. While it is true the right to employ and discharge subordinate employes, when conferred by the master upon an agent, makes the latter in law a vice-principal as to such employes, it does not follow that one can not also be a vice-principal without possessing that authority. One who is empowered by the

master to direct and control the operations of other employes is unquestionably in some respects the representative of the master in the exercise of that authority, and when acting as such is, in law, a vice-principal as to those over whom he is given such supervision. Young v. Hahn, 96 Texas, 99; Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36; Suderman & Dolson v. Kriger, 109 S. W., 373; 26 Cyc., 1306-1313, and cases cited. The common law, which in this State is applicable to this class of services, seems to recognize the following rule: The superior servant who is given the right to employ and discharge those over whom he exercises supervision is, as to such employes, while engaged in the service of the master, a vice-principal, regardless of the grade of service in which he may be engaged at the time; while one merely authorized to control or direct the operations of other employes, is such vice-principal only when exercising the delegated functions. If, for instance, an agent of the latter class should, while in the performance of some service of the same grade with those over whom he is placed, negligently cause an injury to another employe, it would be the act of a fellow servant, because the superior servant would not, in that instance, be acting at the time as the representative of the master. But if the injury should be caused by the negligence of an agent endowed with the power to employ and discharge, it would be the act of the vice-principal and the master would be liable, for the reason that such agent is at all times as to his subordinates the representative of the master. A mere foreman, without power to employ and discharge, may therefore be a vice-principal when directing the operations of other employes over whom he exercises supervision, and a fellow servant as to such employes when cooperating with them in the performance of their duties. While the charge of the court incorrectly stated the law in the particular indicated, it may not have been prejudicial when applied to this case, owing to the fact that Bruce, the foreman, was not charged with any character of negligence except that which must have arisen from his conduct in his representative capacity. In view of the fact, however, that the case will be reversed for other reasons, and that upon another trial a different state of facts may be relied upon and new issues presented, we have thought it proper to call attention to the error embodied in this charge.

The appellant requested and the court refused the following special charge:

"An employer is not responsible in law to an employe for the negligence of a fellow servant; and in this case if you find from the evidence that the proximate cause of the falling of the central upright timber and the crushing of plaintiff's foot was the failure of the men who held the tag line across the railroad track, and whose duty it was to keep the brace timber which was being hoisted by the derrick from colliding with or striking against the structure, to pull on said tag line and thus keep said brace from striking said upright timber; or, stated another way, if you find from the evidence that the proximate cause of the injury was the act of said men holding this tag line in permitting the same to become slack, thus allowing said

brace timber to strike against and become hung upon said upright timber, you will find for the defendant."

The objection urged by appellee in his brief to the giving of this special charge is that it permits a verdict for appellant upon a finding that the negligence of those fellow servants caused the injury regardless of whether there was any concurring negligence on the part of Bruce or Roettiger which contributed to any material extent to that result. If there was sufficient evidence to warrant a finding by the jury that either Bruce or Roettiger was guilty of any such concurring negligence in causing the fall of the timber and the resultant injury, then the charge was properly refused. But if there was not sufficient evidence to support such a finding, then it was error to refuse it.

After stating that Bruce had given directions to the men on the ground to hoist the brace, the appellee in his petition thus proceeds to describe how the accident occurred: "That while the employes upon the ground, by the means of a rope and pulley, were raising said five by eight timber (meaning the brace) as aforesaid, the said Bruce directed the plaintiff to go to the south side of said structure and to hold one end of the five by eight timber in place while the other end of the same was being swung around against the top of the central upright post for the purpose of placing said timber in position, and so fasten the same so as to brace said upright timber and make the same secure; which orders and directions of the said Bruce plaintiff obeyed. And at the time hereinafter mentioned he was at his post of duty, holding said timber in place; and while so holding said timber in place the other end was brought in violent contact with said central upright timber, which caused the said upright timber to fall upon plaintiff's left leg, crushing and mangling the same in such a manner as to necessitate amputation," etc. A more satisfactory conclusion will be arrived at by considering the evidence adduced in support of the different charges of negligence contained in the petition.

As to the insecure fastening of the brace, by which is evidently meant the temporary brace which gave way when the accident occurred, the evidence shows that this was nailed in position by appellee and John Fulwiler, another employe; that appellee nailed the bottom end while Fulwiler nailed the other. If there was any insecurity appellee must be held to have known it, and as being at least jointly responsible for its existence. In addition to this an expert witness called by the appellee testified that a brace such as this was described to have been was sufficient for the purposes for which it was used. The same witness also exonerated Bruce and Roettiger from the charge of negligence in bringing the timbers up on the outside of the structure instead of the inside. Upon neither of these issues was there any successful attempt made to show negligence from which the injury might have resulted. Regarding the charge of negligence arising from the failure to warn appellee of the insecure bracing of the timber and the danger to which he exposed himself in being in the situation he was when injured, there was little or no conflict in the testimony adduced upon the trial. Woodward, a witness for appellee, testified that McCracken represented himself to Bruce as being a

"good top man;" that he had some experience in that line, and expressed a desire to perform those duties. He also testified that Roettiger had ordered all of the men who did not feel safe in that position not to go on top of the building; that these orders were given a dozen times, perhaps. Several other witnesses testified to practically the same facts, and in addition stated that just before the accident Bruce told McCracken that if he did not feel safe on the building to go down. None of this evidence was disputed by McCracken or any of his witnesses. Besides this, the evidence fails to show that there was any particular danger to McCracken in being in the position he was which rested peculiarly within the knowledge of Roettiger or Bruce and which was not equally observable to him. The insecure fastening of the brace, if it existed, was certainly as well known to him as to others. The danger of being injured in the event the central upright piece should fall was no less patent to him than it was to Bruce or Roettiger. He was not injured as the result of an imprudent act ignorantly done by him, but from a source apparently wholly unexpected to all of them and which was no more patent to others than to himself—the falling of the central upright timber.

There is nothing in the evidence upon which to base a finding of negligence "in bringing the brace being raised in violent contact with the upright timber" and thus causing the injury. The account given by the appellee in his testimony on the trial, as to how the accident occurred, is rather vague and indefinite. We think it may be assumed as having been conclusively shown that the immediate cause of the fall of the central upright piece of timber was that some portion of the tackle used in hoisting the brace caught behind the upright about the time the north tag line was pulled the second time, and thus caused the upright timber to be pulled over in the direction of the appellee; that the tackle was thus caught on account of the failure of the men holding the west tag line to pull at the proper time and in permitting their line to become slack, their duty being to keep their line taut, so as to prevent the upper end of the brace then being elevated, or the tackle attached to it, from coming in contact with any portion of the structure. Whatever negligence there might have been in any of these acts was the negligence of the fellow servants, and for which appellant could not be held liable. The only thing done in that connection which could be made the basis of a charge of actionable negligence against the appellant company was the order given by Bruce for the men holding the tag lines to pull. Assuming that in giving this order Bruce was representing the master, the question then is, was he guilty of negligence in giving the order?

We will here digress long enough to say that the state of the appellee's pleadings is such as to make the consideration of this issue as a basis of recovery a matter of doubtful propriety. Appellant insists that the pleadings are not sufficient to authorize such a consideration. In replying to this contention counsel for appellee claims protection under his general averments of negligence as set forth in his petition. The rule adopted in this State seems to be that when the petition contains a general allegation of negligence, and this is fol-

lowed by special averments of particular acts, the special averments will be considered the grounds upon which the plaintiff relies, and recourse to them alone will be had as the statement of the cause of action, unless it also appears from the context of the pleadings that the pleader intended the general averments and the particular allegations to refer to different and distinct acts of negligence. Missouri, K. & T. Ry. Co. v. Vance, 41 S. W., 168; Gulf, C. & S. F. Ry. Co. v. Younger, 10 Texas Civ. App., 141; Houston E. & W. T. Ry. Co. v. Summers, 49 S. W., 1106; Missouri Pac. Ry. Co. v. Hennessey, 75 Texas, 155; Johnson v. Galveston, H. & N. Ry. Co., 27 Texas Civ. App., 616. While we do not rest our disposition of this case upon the insufficiency of the pleadings to authorize the consideration of the issue here suggested, that is, whether it was negligence on the part of Bruce in giving the order for the men to "pull," still we do not decide that it should not be done; and we suggest that the petition be amended if, upon another trial, the plaintiff expects to rely upon that ground for a recovery.

The testimony shows that Roettiger and Bruce had taken the proper precaution to avoid the collision between the brace as it was elevated, or the tackle holding it, and the other timbers, by attaching to the brace a tag line, and had placed this line in the hands of a group of men stationed on the west side of the building, upon whom rested the duty of keeping their line taut so as to prevent the very contact which did occur. Had this group of men done their duty the tackle would have been held off from the upright timber and would not have caught as it did. From this we think it must be found that Roettiger and Bruce exercised ordinary care to guard against the accident which did occur. Having done this, it can not be held negligence in Bruce in ordering the men to pull on the tag lines at the time he did, unless the tackle was at the time caught and he knew it, or the duty to know it rested upon him as a matter of common prudence. It seems that his direction to "pull" was addressed to the men holding both tag lines, and he had a right to expect the men holding the west tag line to pull at the same time the others did. Bruce swears that the brace was swinging loose and was not caught at the time he gave the order to pull. Mitchell, a witness for the appellee, and one of the men stationed at the west tag line and who failed to pull, stated in response to questions upon his redirect examination by counsel for plaintiff, that Bruce ordered them to pull before the brace was caught. There is nothing in the record to contradict this evidence. If, then, this be taken as true, there was nothing to show that Bruce or Roettiger was guilty of any concurring negligence which the charge requested would have excluded from the consideration of the jury. In the absence of any, the appellant had the right to have the issue embodied in that charge submitted to the jury. The fact that the state of the evidence which made it improper for the court to refuse this charge would also authorize a peremptory instruction to the jury to find for the appellant, does not affect the question.

We have simply passed upon the assignment as presented in the record. This case originated in the Third Supreme Judicial District,

and has once been before the Appellate Court. On the former appeal the Honorable Court of Civil Appeals of that district passed upon the issues embodied in two of the assignments of error embraced in the present record. In view of the facts that the consideration of those assignments is not here essential to what we have decided to be a proper disposition of the case, and in deference to the authority of that Honorable Court over appeals originating in that district, we decline to pass upon those assignments.

The judgment of the District Court is therefore reversed and the cause remanded.

*Reversed and remanded.*