SULLIVAN-SANFORD LUMBER COMPANY v. MRS. CLARA COOPER ET AL.

Decided March 10, 1910.

**1.—Continuance.**

A second application for continuance should show that the evidence desired can not be procured from any other source; failing in this it is addressed to the discretion of the court: and abuse of this did not appear where the testimony of the absent witnesses on a previous trial had been preserved and was permitted to be read in evidence from the stenographer's notes.

**2.—Same—Second Application.**

An application for continuance is treated as a second one, though the first, made at a former term, was overruled. .

**3.—Master and Servant—Vice-Principal.**

The status of a foreman having authority to direct and control subordinates in their work as a vice principal with respect to them, is not concluded adversely to such relation by the fact that his power to employ and discharge was subject to the approval of the president of the employing company.

**4.—Same—Case Stated.**

· The foreman in charge of a lumber mill and having authority to direct the work of its employes, the machinery being stopped to repair a break, sent an incompetent and inexperienced employe to do certain work among intricate machinery with which he accidentally worked a lever which set the machinery in motion and caused the death of an employe engaged in its repair. The negligence relied on in a suit by the widow to recover for his death was in detailing the incompetent servant for such service. Held, that a requested instruction denying recovery in case the foreman did not have authority to hire and discharge employes without consulting his superior officer was properly refused.

**5.—Vice-Principal—Injuries Causing Death.**

Negligence of a vice-principal (foreman of a lumber mill) in performing a nondelegable duty of the employer to his subordinate will support a recovery against the latter under the statute (Rev. Stats., art. 3017, sec. 2) for death caused by the negligence of such employer.

**6.—Negligence—Incompetent Servant.**

The selection of an incompetent servant to do work about intricate machinery of the relations and details of which he was ignorant, and which by reason thereof he accidentally set in motion, causing the death of another employe engaged in repairing it, was properly left to the jury to determine the question of negligence in such selection as one of fact.

**7.—Same—Contributory Negligence—Assumed Risk.**

Evidence considered in case of a servant killed while repairing a break in the machinery of a lumber mill by the starting of the machinery in motion through negligence attributable to the employer, and held to disclose no evidence of the contributory negligence on his part nor anything constituting an assumption of the risk by him as matter of law.

**8.—Charge—Omission.**

Appellant can not complain of a charge which merely directs a verdict in his favor on the finding of certain facts.

**9.—Knowledge of Servant's Incompetency—Charge.**

Evidence as to the master's knowledge of the servant's incompetency to perform the work he was directed to do, about complicated machinery which he did not understand, considered, and held that it was not reversible error for the court in his charge to assume the existence of such knowledge.

**10.—Requested Charge—Immaterial Issue.**

A requested instruction on the issue as to the competency of the servant was properly rejected where it made the test of his ability to do the simple act he was directed to perform, when the issue was as to his fitness to perform it among intricate machinery of the details and relations of which he was ignorant.

**11.—Contributory Negligence of Fellow Servant.**

The master is not relieved from responsibility to a servant for injury by his negligence because the negligence of a fellow servant of the injured person contributed to the result.

**12.—Charges.**

Requested instructions were properly refused where the matters were covered by the charge given or where those asked were inapplicable to the issues made by the evidence.

Appeal from the District Court of Morris County. Tried below before Hon. P. A. Turner.

*Harry P. Lawther* and *Chas. Todd,* for appellant.

*J. M. Henderson, S. I. Robison* and *Hart, Mahaffey & Thomas,* for appellees.

LEVY, ASSOCIATE JUSTICE.—On November 18, 1907, R. F. Cooper, a machinist and millwright in the employ of appellant at its lumber mill, while in the work of removing the broken floor-plate of the "nigger," or tooth-bar, of the mill machinery, was instantly killed.

The suit is by the surviving wife, children and father of the deceased, for damages on account of his death, alleged to have been caused by appellant's negligence. The ground of negligence, submitted by the court to the jury, is alleged to be the act of appellant's foreman, a vice-principal, in knowingly directing an incompetent and inexperienced person, ignorant of the character and use of the machinery about and amidst which he was instructed to work and come in contact, to go underneath the floor and unscrew the end nuts and bolts of the broken floor-plate which the deceased at the time, on the first floor, was endeavoring to repair. It was alleged that while the person, as directed by the foreman, was endeavoring to do the work assigned him, and while necessarily climbing around to do such work, he came in contact with the end of the lever next to the valve which operates the loader, and thereby let steam escape into the cylinder and operate the arms of the loader and throw a heavy gum sawlog which was on the loader at the time upon the deceased, killing him. The appellant answered by general denial, plea of contributory negligence, assumed risk, negligence of a fellow servant causing the death. In accordance with the verdict of a jury, judgment was rendered in favor of the wife and children against appellant, and in favor of appellant against the father of deceased.

The evidence shows that appellant, a private corporation, owned and operated a sawmill plant, of which E. B. Wilson at the time was the foreman, having authority from and charged with the duty by appellant to direct and control and have full charge and supervision of the operations and work of all the other employes at the mill, and to employ hands and to discharge hands, but subject to the disapproval of the president of the company. This plant was made up of modern and complicated machinery propelled by steam. Among the contrivances used to save labor and accelerate its business of manufacturing lumber were a steam loader and steam tooth-bar, called in the evidence a "nigger." The former was made up of, among other things, a number of arms, or standards, attached to a shaft which rested alongside, near and parallel with the saw carriage track, at the foot of an inclined plane, called a "skidway." The arms or standards normally stood rigid and upright, and were used to catch and hold logs which rolled down the skidway, and to keep them from rolling on the carriage or carriage track until such time as, in the operation of the mill, a log was needed upon the carriage, when, by means of the application of steam power to the machinery in part making up the construction of the loader, the arms or standards were lowered, and the log rolled on to the carriage. The steam "nigger" consisted of an upright bar provided with teeth, which worked upward and downward through the floor, and near the carriage track, and between the carriage track and loader; it was propelled by steam power and used for turning and adjusting logs while being sawed, after they had been placed upon the carriage. The machinery by which these instrumentalities were operated was situated underneath the floor, upon which rested the carriage track, and the steam used in its operation was applied through valves to which levers were connected, the steam, by means of the valves, being allowed to pass into cylinders. One of

such cylinders operated the loader, and two others operated the "nigger." The levers connected with the steam valves; at least, the loader levers were, in turn, connected with uprights which protruded a short distance through tre floor at the sawyer's stand, and were provided with stirrups, so that steam could be applied to the loader or "nigger" by slight pressure by the sawyer's or operator's foot. The machinery which made up the construction of these instrumentalities was complex, and the relation of one part to another was nicely adjusted, and it was capable of being quickly and easily operated by means of slight pressure applied to the levers, through the uprights projecting through the floor at the sawyer's or operator's stand. Steam was applied to the machinery operating the loader by means of a lever about sixteen feet in length, which was suspended underneath the floor from a fulcrum about its center. One end of the lever was attached to a valve through which steam escaped into the cylinder operating the loader, while to the other end was attached an upright protruding through the floor, to which was attached a stirrup as a means of its operation. The arms or standards were lowered by the application of steam power, and upon relaxation of the pressure assumed and retained a normal, rigid and upright position. This lever was above and about four feet back from the rear, and about seven feet from the front "nigger" cylinder. On the day of the injury in suit the floor-plate of the tooth-bar, or "nigger," broke, and Wilson, the foreman of the mill, as was his duty, caused the mill to be shut down, and not longer for the time operated, and called and directed the deceased, as was his duty, to repair it. At this time a large gum sawlog was resting in the arms of the loader, and deceased, as was the proper way for the performance of his duty, stooped down between the log, which was about two feet distant in front of him, and the carriage track, to make the repairs, and was unscrewing the nuts from the bolts on the floor-plate. Deceased had taken out two bolts and had started to take out another when Wilson, the foreman, directed Ned Barlow, an employe of the mill, to go below the floor and unscrew the nuts from the ends of the bolts which were underneath, and Barlow obeyed the instructions of the foreman. Barlow was a block-setter at the mill, but was not a machinist, and, according to his own evidence, did not know anything about machinery and had never before done that particular kind of work in such place as directed, and did not know how those levers operated when he went down under there, and did not know that if he came in contact with any of those levers it would throw the steam on, and did not know at that time what effect it would have to touch any of those levers, and did not know anything of the machinery that was down under that place. While deceased was sitting on the edge of the log-deck, and stooping over, removing the last nut from the floor-plate, the cylinder operating the loader suddenly took steam and threw the log from the deck on him before he could move out of its way, thereby instantly causing his death. The evidence is sufficient to warrant the inference and finding which is involved in the general verdict of the jury, and which we assume, in support of the verdict, to be true, that Ned Barlow, while doing the work assigned him by the foreman, in moving his position from

one place to another underneath, and in necessarily swinging around a post to get in position to do his work underneath, struck his shoulder against the end of the lever next to the valve which operates the loader, and thereby let steam escape into the cylinder and operate the arms of the loader and throw the log upon deceased. Wilson, the foreman, at the time he sent Barlow beneath and among the machinery, knew, it appears, according to his own testimony, that Barlow was not a competent and experienced person to do such work among such a complex and delicate situation of machinery as was there, and of which Wilson knew. We therefore conclude that there is evidence sufficient to warrant the finding that appellant, acting through its foreman, a vice-principal, failed to exercise ordinary care in selecting a competent person to do the work he assigned to Ned Barlow, and the foreman's act was negligence, as alleged in the petition, proximately causing the death of the deceased, and that the deceased was not guilty of contributory negligence, did not assume the risk as plead, and the evidence supports the amount of the damages awarded.

*After stating the case.*—The appellant made an application for continuance. Appellees filed a contest to the application, and the court, after hearing evidence, overruled the application, and to the action of the court in denying a continuance appellant assigns error. The application for continuance must be held, we think, in the case as a second, and not a first, application, and as a second application it does not meet the requirements of the statute, in that it fails to allege that the testimony to be elicited from the witnesses "could not be procured from any other source." Art. 1278, Rev. Stats.; Campion v. Angier, 16 Texas, 93, 245; Rowland v. Wright, 64 Texas, 261. Failing in its sufficiency in statutory requirement, as it does, then the application rested for ruling in the sound discretion of the court; and, looking to the application and the evidence heard by the court, we do not feel warranted in holding that the court abused his discretion when he denied the continuance. It further appears in the record that the witnesses on account of whose absence the continuance was sought had testified fully on previous trials of the case, their testimony had been taken and transcribed by the official stenographer of the court, and on the instant trial appellant, with the consent of appellees, was allowed to introduce the testimony of such witnesses given upon former trials. In the absence of a statutory showing, as in this case, no reversible error could be predicated, we think, on the court's action, as all the witnesses could have testified to, if personally present, it appears was in evidence before the jury. However much it might be desired by the parties to have the witnesses personally present to testify, yet, under the circumstances as above, it could not be said that their absence alone worked injury. The application as made at a previous term, as it appears in the record with a judgment of the court and with specific grounds for affirmatively overruling it, accomplished the purposes it sought, and would be treated in legal force and effect, we think, in the absence of a showing of an affirmative withdrawal or abandonment at the time, which does not appear, as an application for continuance duly filed, properly presented and over-

ruled by the court. Consequently, in the record the instant application, as stated, should properly be held as having the legal status of a second application. The first and second assignments are overruled.

By the third assignment appellant complains that the charge of the court upon the question of vice-principal failed to correctly state the rule, and that appellant's requested charge upon the subject should have been given. In this connection the evidence showed that E. B. Wilson was appellant's foreman at the mill, having authority and charged with the duty to direct and control and supervise the operation and work of all the other employes at the mill, and to employ hands and discharge them, but subject to the disapproval of the president of the company. The court charged the jury that if they found that Wilson was the foreman, and that the other employes engaged in the operation of the mill were amenable to his orders and subject to his control and direction, and that he had authority from appellant to control and supervise their work and to assign them their work, and to employ and discharge such employes, then Wilson would be a vice-principal of appellant in the operation of the mill. The special charge directed the jury to find that Wilson would be a fellow servant as regards deceased, and not a vice-principal of appellant, if they found from the evidence "that E. B. Wilson at the time of the death of R. F. Cooper did not have the power and authority to hire and discharge employes at his will, without consulting any other person or superior officer of defendant company." We do not think the assignment presents error in the case, and it is overruled. If Wilson had authority as foreman of the mill, as he had, to control the hands and supervise their work, and had authority, as he had, to take Ned Barlow from his regular work of block-setting and assign him to the work of assisting to repair the broken floor-plate, which he was doing at the time Cooper was killed, then it must be held, we think, that Wilson, in changing Barlow from his regular duties and directing him "to go below and unscrew the nuts from the bolts in the floor and drive the bolts up," was performing an act under his employment as foreman that he had authority to do, and that his act, as to the deceased, was the act of the master, and not a mere act of fellow service. 2 Labatt on Master and Servant, sec. 572; Lantry-Sharpe Mfg. Co. v. McCracken, 117 S. W., 453; Suderman & Dolson v. Kriger, 50 Texas Civ. App., 29, 109 S. W., 573; Missouri P. Ry. Co. v. Patton, 26 S. W., 978; Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36, 79 S. W., 869; Young v. Hahn, 96 Texas. 99, 70 S. W., 950. As warranted by the rule announced in the cases cited the special charge was properly refused, because, we think, it could not be held in the case that Wilson's status as vice-principal, as regards deceased, would legally be taken away and destroyed, as the special charge offered instructed, by the fact alone, as other facts of his authority and power appeared in the evidence, that his power of hire and discharge could only be exercised by him subject to the approval of the president, and the latter was the only issue that related to his power and authority of hire and discharge. It might be remarked that the effect is the same, whether the foreman has power to discharge the employe at once or only after consultation with the presi-

dent; the procuring cause of his discharge in either case is disobedience to the foreman, which in such case is, legally speaking, disobedience to the commands and authority of the master. In International & G. N. Ry. Co. v. Hinzie, 82 Texas, 623, 18 S. W., 681, a foreman of the paint shop could discharge only with the consent of the superintendent of the car department. In Zintek v. Stimson Mill Co., 37 Pac., 340, Nelson, who was in charge of the mill, and whose duty it was to superintend the piling of lumber therein, and under whose orders were the workmen engaged in piling, was a vice-principal, though in hiring and discharging workmen he reported to the general superintendent and obtained his sanction therefor. We do not mean to be understood by the remark as saying that in a given and proper case, which the instant case under the facts was not, the absolute and unrestricted power of hire and discharge might not be a material factor in the inquiry of whether a mere foreman stands above or below the line which separates him from a fellow servant.

By the sixth assignment it is contended that the court erred in refusing to give a peremptory instruction to the jury to find for appellant. If it appears from the evidence, as we think it clearly does, as stated before, that Wilson was a vice-principal of the appellant company, as regards deceased, in the act charged as negligence, and the act thus performed by him was the non-delegable duty of the appellant to deceased, as it was, then it could not be held, we think, that the death of Cooper was not within the statute giving a cause of action for death caused by "the wrongful act, negligence, unskilfulness or default" of another. Art. 3017, sec. 2, Rev. Stats.; Citizens' Tel. Co. v. Thomas, 45 Texas Civ. App., 20, 99 S. W., 879; San Antonio Gas & Electric Light Co. v. Badders, 46 Texas Civ. App., 559, 103 S. W., 229. It was properly a question, we have no doubt, for the decision of the jury, in all the circumstances of the case, as to whether the act of Wilson was negligence in knowingly selecting and directing to do the work assigned an employe who was inexperienced and incompetent because ignorant of the working and of the effect of touching or coming in contact with the complex and delicate situation of the machinery below. 1 Labatt on Master and Servant, sec. 194; 4 Thompson on Neg., sec. 4962; International & G. N. Ry. Co. v. Martinez, 57 S. W., 689; Tel. Co. v. Coote, 26 S. W., 912; Missouri Pac. Ry. Co. v. Patton, 25 S. W., 339, 26 S. W., 978; Blackman v. Thomson-Houston Elec. Co., 29 S. E., 120. There is no evidence to support contributory negligence, especially so as a matter of law, and we do not think it could be held, as a matter of law, that appellees were precluded from a recovery because of assumed risk. It does not appear that deceased knew of Barlow's want of knowledge as to the working of the machinery below or the effect of touching the levers, and it does not appear that his former association with Barlow was such as to warrant the holding, as a matter of law, that he had equal means of knowledge with the foreman, or could have learned by the exercise of ordinary care, of Barlow's unfitness or incompetence to work amidst or about complex machinery. Deceased was working upstairs, and could not, it appears, see Barlow below, and how he was moving amidst the machinery. It was properly a question of fact for

the jury as to whether the particular result of the negligence charged could have, under the circumstances of the case, at the place and amidst the surroundings, been reasonably anticipated at the time by Wilson in the use of ordinary care. Mexican Nat'l Ry. Co. v. Mussette, 86 Texas, 708, 26 S. W., 1075.

The appellant can not complain that the court instructed the jury that appellees could not recover if deceased knew, actually or constructively, that Barlow was not competent and skilled to do the work assigned him by the foreman, and the fourth assignment is overruled. The fifth assignment is overruled, as, considering the state of the proof in the record, which the court is authorized to look to, and the charge of the court as a whole, no reversible error could be predicated. In a succeeding portion of the charge the jury was specially directed to find for appellant if Wilson used ordinary care to ascertain if Barlow was a competent person to do the work assigned, taking into consideration all the evidence. This authorized and required a finding in appellant's favor if Wilson was not negligent in ascertaining Barlow's incompetency. That Wilson exercised no care to ascertain anything relative to the competency of Barlow to do the new work at the place and its surroundings assigned him, and did, by reason of his knowledge of Barlow's occupation, know of his unfitness, is by Wilson's evidence established, if not admitted. Barlow, by his evidence, admits his incompetency at the time to do the particular work at such place and surroundings, as seen by reference to his evidence. The court was well warranted, we think, in assuming, as a fact proved in the case, that Wilson knew of Barlow's incompetency at the time he assigned him to do such work, and the court in so assuming did not, we think, commit reversible error in the case.

Considering that the material inquiry was the competency of Barlow to do the new work assigned at the particular place with its surrounding machinery, which required skill or particular knowledge of in working around and in the midst of same, and not simply knowledge of how to unscrew nuts, there was no error in refusing the special charge complained of in the fifteenth assignment.

There was no error in refusing the special charge complained of in the fourteenth assignment, as erroneous and misleading to the jury, because only reasonably capable of a construction by the jury that if the act of Wilson in sending Barlow was negligence, and such negligence was the proximate cause of deceased's death, that still appellees could not recover if Barlow's coming in contact with the lever tripped the loader. Appellant would not be relieved of liability if its negligence, together with the negligence of Barlow, produced the injury. International & G. N. Ry. Co. v. Zapp, 49 S. W., 673.

The refusal to give the special charge complained of in the tenth assignment was not error, as covered in the main charge, and would have been repetition.

There was no error in refusing the charge complained of in the eighth assignment instructing the jury to find for appellant if the appliances furnished for repairing the floor-plate were reasonably safe and suitable for the work, as inapplicable to the facts, and as no recovery in favor of appellees was predicated in the main charge upon

such a ground of negligence. While Cooper was repairing the floor-plate, yet it is conclusive that he was not injured by or through any of the appliances used in or for the repair work being done..

The court in the main charge specifically and affirmatively informed the jury that deceased assumed the risk, and appellees could not recover, if he knew, or by ordinary care would have learned, that Barlow was incompetent in the place he was to work or at the particular work assigned him by the foreman, or if the danger of working at the repair work immediately in front of the loader, upon which a large log was lying, was open, obvious and apparent to him, taking into consideration his experience and knowledge of the machinery both above and below the floor upon which he was working. This, we think, covered all issues of assumed risk arising on or supported by the facts of the case, and special charges Nos. 9 and 10, complained of in the eleventh and twelfth assignments, were properly refused. Deceased did not assume the risk incident to the negligent performance by the appellant, through its foreman, of the duties it was owing him, as the tenth special charge would involve, but only the risks of which he had knowledge, actual or constructive, and the ninth would have been repetition.

All the remaining assignments have been considered, and should be overruled, we think.

The judgment was ordered affirmed.

### ON MOTION FOR REHEARING.

We are of opinion, as before, that Wilson was a vice-principal of the appellant company, as regards deceased, in the act charged as negligence, and the act thus performed by Wilson, in knowingly selecting and directing to do the work assigned an employe who was inexperienced and incompetent because ignorant of the working and of the effect of touching or coming in contact with the complex and delicate situation of the machinery below, was the non-delegable duty of appellant company to deceased. The liability of appellant is predicated upon this ground of negligence. There was no error in refusing a peremptory instruction. We make the additional findings that deceased, while he was at work, heard Wilson tell Barlow to go below and unscrew the nuts from the bolts underneath the floor-plate, and he knew about the place at which Barlow would have to go to perform this work, and how he would have to go to get there. Deceased knew Barlow, and that he was engaged and worked as a block-setter at the mill, and knew the duties of a block-setter, and had seen Barlow at work setting blocks. But it does not appear that deceased knew Barlow's knowledge of the working or effect of touching or coming in contact with the machinery below. The hole in the floor-plate through which the tooth-bar protruded was three feet long and six inches wide. Through this hole Barlow could have been seen by deceased and Wilson, and where he was and what he was doing. Deceased was engaged at his work when he was injured. We conclude, as before, that deceased was not guilty of contributory negligence as a matter of law

or fact, and his injury did not arise from or through any risk that he assumed as a matter of fact or law.

The motion for rehearing was ordered overruled.

*Affirmed.*

Writ of error granted.