Mosher Manufacturing Company v. T. W. Boyles.

Decided November 12, 1910.

**1.—Master and Servant—Negligent Act of Foreman—Liability of Master.**

While the master is not ordinarily liable for the negligent act of a foreman or boss proximately resulting in injury to a fellow servant unless such foreman or boss has the power to employ or discharge his injured fellow servant, yet this rule does not apply to an act of the foreman or boss which from its very nature must be regarded as the act of the master. A foreman giving orders to those who have been placed by the master to work under him, and in reference to work under his control and supervision, necessarily speaks for the master, and in such case is a vice-principal as to those over whom he is given such authority.

**2.—Same.**

A mere foreman, without power to employ and discharge, may be a vice-principal when directing the operations of other employees over whom he exercises supervision; and a fellow servant as to such employees when co-operating with them in the performance of their duties.

**3.—Same—"Safe-Place" Rule—Evidence.**

In a suit by an employee against his employer for damages for personal injuries, caused by the falling of a stack of steel beams on the premises where plaintiff was employed, evidence considered, and held to raise the issue of vice-principal or fellow servant, "safe-place" rule, and assumed risk, all of which were properly submitted to the jury.

Appeal from the District Court of Dallas County. Tried below before Hon. E. B. Muse.

*Harry P. Lawther* and *Holloway & Holloway,* for appellant.

*Carden, Starling, Carden & Hemphill,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—This is a personal injury suit. There is no controversy over the pleadings, and the evidence justifies the following conclusions of fact:

The defendant, at the time the plaintiff received the injuries complained of by him, was a private corporation engaged, among other things, in the business of manufacturing and repairing machinery, staircases, fire-escapes, and in doing structural work. In the operation of its business it maintained a large building and yard in which the different kinds of work incident to its business was performed. In the yards the defendant had stored a number of steel or metal beams, called "I" beams, which were piled one upon the other in separate stacks or tiers, ranging in height from perhaps two to five feet. These beams were from 40 to 60 feet in length, from 6 to 18 inches in width, weighed about 600 pounds, and the piles, or some of them, were stacked rather close to each other. The proper and safe way to pile the beams, so they would not fall down or tumble over, was to place one on top of the other with the flange of each locking the other, but they were not piled that way. They were piled so that the flanges, or some of them, were not close together, and so that some of the beams were not straight, and this made them unsteady.

On December 19, 1907, the plaintiff Boyles, was in the employ of the defendant, and while in the discharge of his duties was seriously and permanently injured, substantially as alleged by him, through the negligence of the defendant. He was not guilty of contributory negligence, nor did he assume the risk of injury from the manner in which the beams were stacked. Plaintiff went to work first with the yard gang. After working with this gang a few weeks he was put to work on the inside of the building with what was known as the rivet gang. His regular employment was with the rivet gang, but at the time he received his injuries he was picking up scrap iron lying in the yard. He was instructed to do this work by Joe Miller, who plaintiff says was defendant's second foreman or "straw boss" in charge of the work. Walter Hunt being the general foreman. While plaintiff was between two piles of "I" beams picking up scraps of iron as directed by Miller, one of the piles toppled over, fell upon and broke one of his legs in two places. At the time of the accident other employees of the defendant were at work taking down and restacking piles of beams in the yard, but were not then engaged in taking down or restacking the particular pile of beams that fell upon and injured the plaintiff. The picking up of the scrap iron and restacking the piles of beams was preparatory to the taking of stock by the defendant.

The grounds of negligence alleged by plaintiff are, in substance, the failure of the defendant to furnish him a safe place in which to work, in that, it failed to exercise ordinary care to so stack the beams which fell upon him as that they would be in a reasonably safe condition, and

so they would not topple over or fall; directing and causing plaintiff to go into a dangerous place, which was known to it, or in the exercise of ordinary care could have been known by it, and which was unknown to plaintiff; failure to inspect said pile of beams and to discover their dangerous condition.

The defenses were, a general denial, contributory negligence, and assumed risk; that if plaintiff was injured as alleged the same was the result of the negligence of a fellow servant; that the conditions of plaintiff's working place were constantly changing by reason of his fellow servants, composing the yard gang, taking down and restacking the piles of beams in the yard preparatory to taking an invoice of the stock—rendering inapplicable the safe-place rule.

A jury trial resulted in a verdict and judgment for plaintiff in the sum of $7000, and the defendant appealed.

Appellant's first assignment of error complains of the court's refusal to give a special charge requested by it directing a verdict in its favor. The propositions urged under this assignment are to the effect:   (1) that it was proven that the pile of beams which fell upon Boyles had been stacked by members of the yard gang after he had commenced to work for appellant, and that it was an admitted fact that the members of the yard gang were fellow servants with plaintiff; (2) that Joe Miller was simply a straw boss with no power to hire and discharge, and admittedly a fellow servant with plaintiff; (3) that if the pile of beams was improperly stacked, the same was an open, apparent and obvious fact, with equal opportunity on the part of the plaintiff with defendant's foreman, Hunt, to know the same, and that the same was known to plaintiff, or in the exercise of ordinary care should have been known to him; (4) it was uncontroverted that at the time and place of the accident plaintiff and the yard gang were all engaged in the yard in work preparatory to taking stock, by reason of which the conditions about the place where plaintiff was hurt were continually changing, a fact open and apparent to plaintiff, and hence he assumed the risk,—the safe-place rule not applying; (5) where the servant knows the danger, or if he should in the exercise of ordinary care have necessarily become aware of the danger, in the prosecution of his work, he assumes the risk notwithstanding the master may have negligently ordered him into the dangerous place; (6) the defendant was not an insurer of the safety of its premises, but was only required to use ordinary care to keep them reasonably safe; that plaintiff went to work for the defendant on September 10, 1907, and if the pile of beams which fell on him were stacked before that time, the burden was on him to show that it fell because of inherent defects which were or should, in the exercise of ordinary care, have been known to the defendant.

We have carefully examined the record and read with care the evidence quoted in the briefs, and much of it as found in the statement of facts sent this court, and we do not find anywhere the admission asserted by the appellant, that plaintiff and Joe Miller, or plaintiff and

the yard gang, were fellow servants; nor do we find that it was conclusively established by the evidence either that such relationship existed, or that the pile of beams which fell over and upon the plaintiff had been stacked or undergone any material change with reference to the manner in which they were originally stacked, after he commenced to work for appellant. The witness Rainwater testified: "I remember when plaintiff (Boyles) went to work for defendant, and that pile of beams was there when Boyles started to work for defendant. They were in the same condition before he went to work there as they were when they fell on him and during the time between the time when they were first piled and the time when he got hurt." W. T. Hamm, a witness offered by the appellant, testified: "I went to work there for the Mosher Manufacturing Company on the 27th day of August, 1907, and this stack of beams that fell over on Boyles was there when I went there." Appellant's foreman, Hunt, testified: "I have no idea how long this pile of beams that they told me had fallen over on Boyles, had been there in the yard; I don't know who stacked it except it was the yard gang. . . . I don't think I have any knowledge of just how long it had been there." And Joe Miller, who directed plaintiff to pick up the scrap iron, said: "I could not tell you when that pile of beams that fell over on plaintiff was put there."

If the beams were stacked before plaintiff commenced to work for the defendant, then, of course, the members of the yard gang who stacked them were not fellow servants with the plaintiff. There was testimony, it is true, from which the jury might have reached the conclusion that the pile of beams in question was stacked or some of them placed upon the pile, after the plaintiff began working for the defendant; but taking the evidence as a whole, which must be done, it raised the issue of fact, whether the beams were stacked before or after plaintiff commenced to work for defendant, and whether, if stacked afterwards, the plaintiff was a member at that time of the yard gang, and such issues were properly submitted to the jury for their determination. There is evidence that the plaintiff when he first began to work for the defendant was made one of the yard gang; that after he had worked in this department of service for a few weeks he was transferred to the rivet gang and put to work on the inside of the building. Whether the pile of beams was stacked while plaintiff was a member of the yard gang, assisting in such work, or while he was a member of the rivet gang, was a question for the jury. If plaintiff was a member of the rivet gang when the beams were stacked, then it can not be said that his injuries were the result of the negligence of a fellow servant in improperly stacking the beams.

Again, whether Joe Miller and the plaintiff were fellow servants may have been an issuable fact, but we are inclined to think Miller was a vice principal. Construing the evidence, however, most favorable to appellant, whether such relation existed or not was a question for the jury. The principal testimony touching the position and authority of Miller over the plaintiff is as follows: Miller himself testified: "My

position is laying out the work. All I know is that they call me an iron worker. Some of the men called me a straw boss. I know what a straw boss is. A straw boss is one that gets instructions from the general foreman and turns it over to the hands working under him. Mr. Hunt is the general foreman down there of the structural department. I did not hire or discharge anybody down there. I have got no authority to hire or discharge anybody down there. . . . I don't know how long plaintiff had been picking up scrap iron at the time he got hurt; I told him to pick up scrap iron that morning. I told him to pick up the scrap iron and pile it up in a close pile where we could weigh it handy. I did not tell the plaintiff to go down between the piles of beams and pick up scrap iron." Hunt testified: "I am now and have been foreman of Mosher Manufacturing Company for six years. My duties in that connection are looking after the plant and hiring and discharging men. I put Mr. Miller in charge of those men there connected with the yard gang, and they did, or were supposed to do, what he told them to do in that respect, and with respect to the men under him, and with respect to the work to be done there in the yards. He had general authority with respect to these matters down there." Plaintiff Boyles testified: "I worked under Walter Hunt and Joe Miller down there. I worked under both of them. They were both my foremen. . . . Joe Miller gave me orders to pick up the scrap iron. Joe Miller was the second foreman down there. I obeyed either Mr. Hunt's or Joe Miller's instructions. Joe Miller generally gave us orders. . . . I think I worked three days on the inside picking that up (scrap iron). When I got through with that, he (Miller) told me to go outside, and just before I got hurt I had gathered it (the scrap iron) all up except between those stacks of steel, and he (Miller) says: 'Boyles, there is some scrap iron over there among that steel, pick that up.' . . . I don't think it was over five minutes before I got hurt that he told me to go in among those stacks of steel and get the scrap iron out of there."

It does not appear, so far as we have discovered, that Miller, at or about the time plaintiff was injured, was engaged either in picking up scrap iron or assisting in taking down and restacking the piles of beams. The names of several employees doing the latter work is given, but Miller's name does not appear among them. The only connection which he is shown to have had with the matter was to direct the plaintiff and other employees at work in the yard to do the particular work each was performing at the time plaintiff was injured. Now, while it is settled by the decisions of this State that the master is not liable, ordinarily, for the negligent act of a foreman or boss proximately resulting in injury to a fellow servant unless such foreman or boss had the power to employ or discharge his injured fellow servant, yet we understand that this rule does not apply to an act of the foreman or boss which from its very nature must be regarded as the act of the master. A foreman giving orders to those who have been placed by the master under him to

work, and in reference to work under his control and supervision, necessarily speaks for the master and in such case is a vice-principal as to those over whom he is given such authority. Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36 (79 S. W., 869) ; Lantry-Sharpe Contracting Co. v. McCracken, 53 Texas Civ. App., 627 (117 S. W., 453). In the last case cited, the common law rule, which is applicable in this State in cases not affected by our statute, is stated thus: "The superior servant who is given the right to employ and discharge those over whom he exercises supervision, is, as to such employees, while engaged in the service of the master, a vice-principal regardless of the grade of service in which he may be engaged at the time; while one merely authorized to control or direct the operations of other employees is such vice-principal only when exercising the delegated functions. If, for instance, an agent of the latter class should, while in the performance of some service of the same grade with those over whom he is placed, negligently cause an injury to another employee, it would be the act of a fellow servant, because the superior would not, in that instance, be acting at the time as the representative of the master; but if the injury should be caused by the negligence of an agent endowed with the power to employ and discharge, it would be the act of the vice-principal, and the master would be liable, for the reason that such agent is at all times, as to his subordinates, the representative of the master. A mere foreman, without power to employ and discharge, may therefore be a vice-principal when directing the operations of other employees over whom he exercises supervision, and a fellow servant as to such employees when co-operating with them in the performance of their duties."

We are also of the opinion that the "safe-place rule" was clearly applicable under the evidence, and that it can not be said as a matter of law that plaintiff assumed the risk of the danger in going between the piles of beams to pick up the scraps of iron. He was not engaged with the members of the yard gang, in taking down and restacking the piles of beams situated in the yard. On the contrary, he was engaged in an entirely different character of work, namely, picking up scrap iron, and placing it in piles to itself, which was lying scattered over the yard. This work of itself was not dangerous, while that of taking down and restacking the beams would be attended, perhaps, with more or less danger. The beams that were being taken down and restacked were in separate stacks, and only one stack being taken down at a time. The stack that fell upon plaintiff was not being taken down or restacked or otherwise being interfered with at the time it fell, and hence the condition of the place at which plaintiff was injured ·was not undergoing any change with respect to the pile of beams or otherwise by the work of the yard gang or his own work at the time he was injured, that necessarily endangered to any extent his presence there. Under the circumstances shown, it was the duty of the defendant to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, and a failure

to do so was negligence. Whether the beams were improperly and unsafely piled and the danger of their falling obvious; or whether plaintiff had an equal opportunity with the defendant to know the condition of the pile of beams, were questions of fact, and all fully and clearly submitted either in the court's general charge or special charges requested by the defendant. The evidence bearing upon these questions, or either of them, was not so one-way that reasonable minds could not draw different conclusions from it. Whether the risk of danger attending the work being performed by the plaintiff was one ordinarily incident to his employment, or whether plaintiff knew of the danger or in the exercise of common prudence in the discharge of his duties, must necessarily have known it, were also issues of fact that should have been, and were, by appropriate charges, submitted to the jury.

The second, third, fifth, sixth, seventh and ninth assignments of error are grouped in appellant's brief, and complain of the court's refusal to give certain special instructions relating to the subject of fellow servants, and the law governing in such cases. There is but one proposition made under these several assignments, which is to the effect, that while the trial court, in its general charge and in the special charges requested by the defendant, instructed the jury as to who were fellow servants with the plaintiff and that under the law the defendant was not responsible for their acts of negligence, he erroneously qualified the same with the instruction that said charges were not applicable if they found that the pile of beams was stacked prior to the time plaintiff commenced to work for the defendant. We are inclined to think the qualification of the charge was entirely correct under the facts. At least it furnishes no sufficient ground for a reversal of the case, and the assignments will be overruled.

The questions presented by the other assignments are practically the same as those raised in assignments already discussed. These questions have been decided adversely to the contention of appellant and further consideration of them is unnecessary. While the evidence was conflicting, it was sufficient to justify and sustain the verdict of the jury. The court's charge fairly presented all the issues raised, and no substantial injury was done the appellant by any of the rulings of which complaint is made. The judgment of the court below is, therefore, affirmed.

*Affirmed.*

Writ of error refused.