## CITY OF GREENVILLE v. BRANCH.

(Court of Civil Appeals of Texas. Dallas. Dec. 21, 1912. Rehearing Denied Jan. 4, 1913.)

1. TRIAL (§ 251*) — INSTRUCTIONS—CONFORMITY TO PLEADINGS.

In an electric light lineman's action for injuries, the petition alleged that defendant permitted the insulation on the wire to become defective and out of repair, that it permitted it to be charged with electricity in the daytime contrary to its rule and custom, and failed to inspect and discover its contact with other wires, by which it became so charged, and that its foreman directed plaintiff to take hold of such wire as a result of which he was seriously and permanently injured by an electric shock. The court charged that it was the duty of an employer to exercise ordinary care to furnish an employé a reasonably safe place to work, and that the employé might assume that the employer had discharged its duty. *Held*, that this was authorized by the petition, since, although it did not directly charge that defendant failed to furnish plaintiff a safe place in which to work, that was the legal effect of its allegations.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

2. TRIAL (§ 252*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

Where the evidence showed that an electric light lineman was injured in the performance of his duties by an electric shock from a wire supposed to be dead, but which had become charged by contact with other wires, that the only means of inspection adopted for discovering such contacts was an indicator or switchboard in the power house, and that defendant's engineer in the power house failed to watch the indicator and give notice of the contact shown thereby, an instruction that it was the employer's duty to exercise ordinary care to furnish a reasonably safe place to work, and that the employé might assume in the absence of knowledge to the contrary that the employer had discharged that duty, was justified by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

3. MASTER AND SERVANT (§§ 119, 124*)—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.

The rule of safe place applies to a line of poles and electric light wires on which a lineman is required to work, and it is his employer's duty to inspect the poles, cross-arms, and wires, and see that they are reasonably safe and free from latent defects and dangers which ordinary care might avoid.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 210, 235–242; Dec. Dig. §§ 119, 124.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.

In an electric light lineman's action for injuries, the petition alleged that defendant permitted the wire to be charged with a current of electricity in the daytime, contrary to its rule and custom, either by its agents causing the current to be turned onto the arc circuit at the power house, or in permitting the wire to come in contact with another wire or wires at some point, or in contact with damp pieces of wood, trees, etc. The evidence showed conclusively that defendant's agents at the power house did not turn the current onto such wire, but that it had become charged by contact with other wires. The court charged that if defendant caused or permitted the wires to become charged with electricity, and if in permitting the wire to be so charged it was guilty of negligence, and did not use ordinary care, to find for plaintiff, and refused an instruction that there was no evidence that the current was turned on at the power house. *Held*, that the instruction given submitted as a ground of recovery only defendant's negligence in permitting the wire to be charged, and did not submit its negligence in causing it to be charged, and hence the denial of the requested instruction was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. TRIAL (§ 252*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

In an electric light lineman's action for injuries caused by a shock from a wire supposed to be dead, evidence *held* to justify the submission of the issue whether defendant was negligent in permitting the wire to be charged with electricity.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. MASTER AND SERVANT (§ 185*)—MASTER'S DUTIES—DELEGATION.

Where the only means employed by a city operating an electric light plant to discover contacts between wires supposed to be dead on which its linemen were working, and wires charged with electricity, was an indicator or switchboard in the power house which its engineer was required to watch, it was liable to a lineman for the engineer's failure to watch the indicator; the duty of inspection being a nondelegable one.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

7. DAMAGES (§ 142*)—PLEADING — GENERAL DAMAGES.

Damages which naturally and necessarily flow or result from injuries alleged are considered general damages, and need not be specially pleaded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 413; Dec. Dig. § 142.*]

8. DAMAGES (§ 185*) — EVIDENCE — WEIGHT AND SUFFICIENCY.

In a lineman's action for injuries from an electric shock, evidence *held* to show that his injuries were of such a character that physical pain, loss of time, and diminished capacity to labor and earn money would naturally and necessarily result therefrom, and hence damages therefor were recoverable, although not pleaded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 503–508; Dec. Dig. § 185.*]

---

9. TRIAL (§ 251*)—INSTRUCTIONS—CONFORMITY TO PLEADINGS.

In an electric light lineman's action for injuries, where the petition alleged that defendant failed to inspect and discover the contact of a supposedly dead wire with those charged with electricity, an instruction that if defendant permitted such wire to become charged by contact with others, and if its engineer in charge of its power plant failed to watch the indicator or device provided for showing such contacts, and if, as a proximate result of such negligence, plaintiff was injured, the jury should find for plaintiff, was justified by the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

10. MASTER AND SERVANT (§ 185*)—LIABILITY FOR INJURIES—FELLOW SERVANT.

Where the only method provided for an electric light plant to discover contacts between live and dead wires was an indicator in the power house, its engineer in watching such indicator was not a fellow servant of a lineman injured by his negligence, since he was performing a nondelegable duty of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

11. MASTER AND SERVANT (§ 185*)—LIABILITY FOR INJURIES—FELLOW SERVANT.

The general rule that a master is not liable for the negligence of an employé resulting in the injury of a co-employé, even though he be a foreman or boss, unless he is given power to employ and discharge other employés, does not apply where the negligence complained of is the omission of a duty which the master owed to the injured employé, the performance of which he intrusted or delegated to the negligent employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

12. MASTER AND SERVANT (§ 189*)—LIABILITY FOR INJURIES—FELLOW SERVANT.

A foreman who has authority to control and direct other employés in the performance of their work, and who, although he has no authority to employ or discharge employés, has authority and it is his duty to report disobedience of his orders and cause them to be discharged, is not a fellow servant of the other employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

13. MASTER AND SERVANT (§ 189*)—LIABILITY FOR INJURIES—FELLOW SERVANT.

A foreman giving orders to those placed under him to work by the employer in reference to the work under his control and supervision necessarily speaks for the employer, and is a vice principal as to the employés over whom he has authority.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

14. APPEAL AND ERROR (§ 1067*)—REVIEW—HARMLESS ERROR.

The refusal of an instruction that there could be no recovery for the negligence of an injured employé's foreman, if error, was harmless, where his negligence was not submitted as a ground of recovery.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

15. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR — STATEMENTS — QUOTING INSTRUCTIONS.

An assignment that the refusal of a special charge was erroneous is not entitled to consideration where the charge is not quoted in the statement thereunder, nor the page of the transcript where it may be found given.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

16. TRIAL (§ 229*)—INSTRUCTIONS—REQUESTS FOR INSTRUCTIONS.

Where a party asks more than one charge on the same subject, and the court selects and gives one of them, he cannot complain of the refusal of the others.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 513; Dec. Dig. § 229.*]

17. MUNICIPAL CORPORATIONS (§ 733*)—TORTS—GOVERNMENTAL OR CORPORATE POWERS.

A city operating an electric light plant for the purpose of lighting its streets, and also for the purpose of furnishing private lights to its citizens for which it charges and receives compensation and makes a profit, is liable for injuries sustained by a lineman.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1547–1549, 1561; Dec. Dig. § 733.*]

18. MUNICIPAL CORPORATIONS (§ 745½*) — TORTS—GOVERNMENTAL OR CORPORATE POWERS.

A city as a general rule is not liable for the torts of its officers in the discharge of duties in the interest of the public at large, but is liable for their unlawful acts in discharging functions conferred for the peculiar advantage of its own inhabitants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1568, 1569; Dec. Dig. § 745½.*]

Appeal from District Court, Hunt County; T. D. Montrose, Judge.

Action by O. E. Branch against the City of Greenville. Judgment for plaintiff, and defendant appeals. Affirmed.

F. M. Kemp and Looney, Clark & Leddy, all of Greenville, for appellant. Evans & Carpenter, of Greenville, for appellee.

TALBOT, J. Appellee brought this suit to recover damages on account of personal injuries sustained by him through the negligence of appellant. The petition alleges, in substance: That the city of Greenville is a municipal corporation, and on April 5, 1911, and for some years prior thereto, owned and operated an electric light plant and wires extending throughout the city for the purpose of generating electricity and lighting its public streets with electric lights and for the purpose of supplying, for compensation and pecuniary profit, the inhabitants of said city with electric lights for private use in their homes and places of business. That on the date above mentioned the appellee was in the employ of appellant as lineman, and that, while discharging the duties incumbent upon him under his employment in repairing said electric system, he took hold of an arc wire of said system, and received a severe electrical shock, which seriously and permanently injured him. The acts of negligence charged against the defendant are (1) that it permitted the insulation on the wire conveying the electricity into plaintiff's body to become defective and out of repair; (2) that it

permitted said wire, without plaintiff's knowledge, to be charged with a current of electricity in the daytime, contrary to the rule and custom of the defendant, either by the agents of the defendant causing the electrical current to be turned onto the arc circuit at the power house, or in permitting said wire to come in contact with another wire or wires at some point in the city unknown to plaintiff, or in permitting said wire to come in contact with damp pieces of wood, trees, or poles, at some point or location unknown to plaintiff, or in permitting said wire to become charged with electricity from some other source unknown to plaintiff; (3) failure to inspect and discover the contact of its wires; (4) that D. C. Burke, who was plaintiff's immediate superior and who had power to control and direct him in his work, and who, in conjunction with defendant's superintendent, Phillip Schott, had authority to employ and discharge or cause plaintiff to be discharged, with knowledge that the wire which injured plaintiff was charged with electricity, or should have known that it was, directed plaintiff to take hold of said wire, which, in obedience to such direction, he did, and because of the electricity with which it was charged he was seriously and permanently injured as alleged. Appellant answered by general demurrer, general denial, and specially that appellee's injuries were the result of his own carelessness and negligence, and from risks ordinarily incident to the employment in which he was engaged; that it was a part of appellee's duty as appellant's lineman to ascertain, inspect, and discover the condition of said electrical system, and that, in the discharge of such duties, he must necessarily have acquired knowledge of the fact that said wires were charged with a heavy current of electricity; that appellant was a municipal corporation operating under a special charter; that at the time appellee was injured it was not operating its electric plant for private profit, but exclusively for public purposes.

The evidence is sufficient to warrant the following conclusions: The appellee, Branch, at the time he received his injuries, was and had been for many months in the employ of the appellant as lineman, his duty among others being to make repairs on the city's electric lines. The city's light plant had two systems of wires—one called incandescent, for carrying current in the daytime, and one called arc, for furnishing lights on the streets at night—the latter, under the city's rules, not carrying a current in the daytime. The city had a pole standing at a street corner in front of what is known as the "Palace of Sweets," on Lee street, on which were fixed cross-arms of wood, and above them a breaker-arm of iron. This pole supported both arc and incandescent wires, and from the breaker-arm up about the top of the pole branch wires lead off from the main or primary wires, down to a street light, suspended in the street, probably 15 or 20 feet above the ground, but several feet lower than the breaker-arm. During the evening or night before plaintiff was injured there had been a rainfall, sufficient to wet the wooden cross-arm, and one of the branch wires leading from the breaker-arm down to the street lamp had slipped and was pressing against this cross-arm, and, on account of the wood being wet, had the night before formed an arc, or blaze, at the point of contact, and this condition constituted what was called "trouble" with the arc system. The wooden arm having become dry, so that it wouldn't act as a conductor, there was no such blaze when plaintiff attempted to do the work he was doing when hurt; nor was there anything to indicate to plaintiff the presence of the current in said wire, and he did not know of the same until he was injured by it. D. C. Burke, an agent or employé of appellant, who had the authority to direct and control Branch in the performance of work for the city, and to report him to the proper officer and cause his discharge for disobedience, was present and directed Branch to go up the pole and arrange the wire, so that it would not come in contact with the cross-arm, stating at the time that the wire was "dead" and there was no danger in handling it, that it was not charged with electricity, and knowing that in order to remedy the trouble it was necessary to remove the insulation and make a new joint and put on another piece, and that in doing this Branch would necessarily have to come in contact with the naked wire. Branch relying on the wire being "dead," or not charged with electricity, and in obedience to Burke's direction, took hold of the wire to do the things necessary to remove its contact with the cross-arm, and the insulation being defective came off when he grasped it with his hand, and the wire being in fact charged wth a heavy current of electricity, Branch sustained the injuries for which he sues. Burke had received information of the "trouble" that Branch was directed to remedy, a short time before the accident, and he and his son, Earl Burke, also a lineman, went with Branch to remedy the same, and was personally directing the work when the accident occurred. Burke did not know that the wire was charged with electricity, but supposed it was not. Branch was injured by reason of appellant's arc wire coming in contact with some of its day circuit wires somewhere in the city, but when, where, or how this contact occurred was not shown. It might have occurred, however, by the wires of the two systems being permitted to become too loose and sagging until they touched, or because of being too loose may have been blown together by the wind. No one by looking at the wires could discover they were charged; but by going out along the wires over the city and inspecting the same any contact or connection between the two systems of wires could have

been discovered by ordinary careful inspection, and such contact or connection would have indicated that the dead arc wires were receiving a current from the day wires. It was not plaintiff's duty to inspect. No inspector was employed by the city for that purpose. The means of inspection adopted by it was a device called "indicator" or switchboard installed in its power house, which by means of a needle attachment would readily indicate any "ground" or contact of the wires, and it was the duty of the engineer, J. K. Woodyard, at the power house to watch this indicator, and, in event it showed an arc wire had become charged in daytime, at once to notify the employé of appellant in charge of the city light office in town, who was required to notify Mr. Burke, and he, in turn, to notify the linemen. This the engineer negligently failed to do on the morning appellee was injured. The linemen and other employés trimmed arc lamps connected with arc wires, and habitually and commonly worked with and about these arc wires in the daytime under the city's direction, which was one of the necessities for said arc wires being dead in the daytime, and the city and its linemen relied on said engineer keeping watch of said indicator and giving notice as aforesaid. The arc wires should not have been charged with electricity in the daytime, and Branch had never before found a current there, without having been notified thereof. He testified that it was wholly impossible for him to have handled said wires, and to have done the work he was engaged in without taking hold of the wire, stripping off the insulation, and placing himself in the position he was in at the time he was hurt, and the jury were authorized to find that he did not assume the risk of his injuries, and that he was not guilty of contributory negligence. The case was tried before a jury, and the trial resulted in a verdict and judgment for $7,000.

[1-3] In the fourth paragraph of the court's charge the jury were instructed that it is the duty of the master to exercise ordinary care to furnish the servant a reasonably safe place to work, and that the servant in the absence of knowledge to the contrary may assume that the master has discharged his duty, etc. Appellant assigns this charge as error, the contention being, in effect, that, while it enunciates a correct abstract principle of law, yet it was error to give it in this case because not authorized by the pleadings or the evidence. In this view of the pleadings and evidence we do not concur. It is true that plaintiff's petition did not, in so many words, allege that the defendant failed to exercise ordinary care to furnish plaintiff a safe place in which to perform the work required of him, but that such was the legal effect of his allegations seems clear, and that the evidence was sufficient to justify the conclusion that defendant had failed to perform such duty

152 S.W.—31

seems equally clear. These things being true, the charge complained of was not inapplicable. The rule of safe place applies to a line of poles and wires such as plaintiff was required to work upon, and it was the duty of the defendant to see that such poles, cross-arms, and wires were reasonably safe and free from latent defects and dangers, which ordinary care on its part might avoid. Cooley on Torts (3d Ed.) p. 1123. The evidence does not show that the duty of inspecting the poles and wires, with a view of ascertaining their safety before venturing upon and in contact with them, was imposed upon the plaintiff by the terms of his contract of employment. The duty of inspection with a view of detecting any dangerous condition of its wires and of guarding its employés against such condition rested upon appellant and the evidence justifies the conclusion that it failed to perform this duty.

[4] Appellant's second assignment of error complains of the fifth paragraph of the court's charge, which is as follows: "Therefore if you find from the evidence at the time and place as alleged by plaintiff he was the servant of the defendant, and that as such servant plaintiff was directed by some one having authority to so direct him to repair certain wires, being part of the electric lighting system of defendant as alleged, and if you believe that, while in the act of taking hold of an arc wire of said system as alleged, he received a severe electrical shock causing him severe and permanent injuries, as alleged by him, and if you believe from the evidence that defendant during, before, or at said time had caused or permitted the arc wires of said electric lighting system to become charged with electricity, and if you further believe that in doing said repair work by plaintiff he was exercising ordinary care for his own safety, and if you further believe that in permitting said arc wire to be charged with electricity at said time, if it was, the defendant was guilty of negligence, as that term is defined, and the defendant had not used ordinary care in permitting said arc wire to be charged with electricity at said time, and that but for such negligence of the defendant, if any, plaintiff would not have been injured, then you will find for the plaintiff." The single proposition propounded under this assignment is: "There being no evidence whatever showing or tending to show that appellant was guilty of any negligence in permitting or causing the arc circuit wire to be charged with electricity at the time appellee was injured, said charge was unauthorized and upon the weight of the evidence." In this connection the defendant requested the following special charge: "You are instructed there is no evidence in this case showing that any electrical current was turned into the arc circuit from the power house of the defendant, and you will therefore not consider this allegation of plaintiff's petition in

arriving at your verdict in this case." This charge was refused, and its refusal is also assigned as error, appellant contending that appellee having alleged, as a ground of negligence, that the arc wire was charged with electricity by the same having been turned onto said wire by appellant's servants at the power house, and the uncontroverted evidence showing that it had not been so turned on, the court should have instructed the jury not to consider this ground of negligence in arriving at their verdict. The evidence conclusively establishes that the servants of appellant at the power house did not turn onto the arc circuit wire what was known as the arc current proper, and, therefore, there was no evidence, as contended, to justify the submission of the issue as to appellant's negligence in causing the arc wire to be charged with electricity on the theory that its servants had turned the current onto it from the power house; but the question arises, Was such issue in fact submitted in the court's charge? The only basis for the claim that it was is found in the use of the word "caused" immediately preceding the words "or permitted." Nowhere in the charge were the jury told that if the wire which injured plaintiff was charged with electricity by the servants of the defendant causing the electrical current to be turned on at the power house, etc., they should find for the plaintiff, and it will be noted that the only negligence upon which they were authorized to predicate a finding in favor of the plaintiff was in permitting said arc wires to be charged with electricity at the time plaintiff was injured. Ordinarily the language of the charge, "caused or permitted the arc wires of said electric lighting system to become charged with electricity," etc., might be construed as having the effect of submitting both the issue of causing or permitting the act charged, and authorize a verdict for the complainant, if the jury should find in his favor upon either, but where such language is qualified, as in the charge under consideration, and the only ground of negligence upon which a recovery may be had is limited to "permitting" the thing complained of to be done or to exist, it seems to us it may be safely said that the issue of "causing it to be done" is not submitted. If this construction of the court's charge is correct, then the effect of it was to eliminate or withdraw the issue as to whether or not the defendant negligently caused the current of electricity to be turned on the arc circuit wire from the power house of the defendant, and the refusal of appellant's special charge in relation thereto was not prejudicial. Railway v. Ames, 94 S. W. 1112. In the case of Railway Co. v. Miller, 79 Tex. 78, where the issue sought to be withdrawn by a special charge had not been submitted in the court's general charge, the Supreme Court held that the trial court did not err in refusing the special charge requested, and said: "It has been frequently ruled that the giving of a charge upon a state of facts where there was no evidence tending to show the existence of such facts was erroneous because misleading; but it has never been held that the refusal to give a charge to the effect that there was no evidence tending to show a given state of facts was ground for reversal."

[5] Nor do we think the contention that there was no evidence authorizing the submission of the issue as to whether or not appellant was guilty of negligence in permitting the arc circuit wire to be charged with electricity at the time of appellee's injury should be sustained. Predicated upon the uncontroverted testimony which admits of no conclusion other than that the arc wire had become charged with electricity by coming in contact with the incandescent or day circuit, and the absence of any direct testimony disclosing when, where, or how such contact was brought about, able counsel for appellant argue that the evidence falls short of showing that the contact of the wires resulted from any negligence on the part of appellant, that the doctrine of res ipsa loquitor has no application, and therefore proof alone that appellant's wires in some way became crossed was insufficient to show that appellant negligently permitted that condition, and the charge in question was error. In the view we take of the case, it becomes unnecessary to discuss and determine the applicability of the doctrine of res ipsa loquitor. Whether that doctrine, strictly speaking, is or is not applicable in this case, the evidence in our opinion was sufficient to authorize the charge under consideration. There are facts and circumstances in evidence which ought to be sufficient, it seems to us, independently of the fact that a heavy current of electricity was communicated to appellant's arc circuit wire by the same coming in contact with an incandescent light wire and appellee thereby injured to justify a finding that such contact and condition of the arc circuit wire at the time appellee received his injuries was the result of appellant's negligence. While the witnesses stated that the contact might have been brought about in several different ways, some of which the appellant could not be held accountable for, yet it occurs to us that the most plausible and reasonable deduction to be drawn from the testimony, or at least a fair one and one which the jury were authorized to and probably did draw, is that appellant's wires were "strung with too much slack in them," and too close to each other. If they were so constructed, and by reason thereof the contact was made, then it may be said that appellant negligently permitted the arc circuit wire to be charged with electricity when appellee was hurt, and that the charge of the court complained of was proper. The witness Burke testified that the wires might have been brought in

contact by a tree falling on some of them or by a high wind, but it is a significant circumstance that, although appellant must have discovered and removed the contact after appellee was injured, yet it offered no testimony whatever showing that there had been a high wind the night or morning before the accident, or that a tree had fallen on the wires. In fact, appellant offered no explanation of how its wires happened to be crossed. The court, however, instructed the jury at appellant's request to the effect that, if its wires came in contact with a damp piece of wood, tree, or pole, causing the arc circuit wire upon which appellee was injured to become charged with electricity, such fact would not be negligence on the part of appellant, unless it knew of it, or in the use of ordinary care could have discovered such fact in time to have removed the contact before appellee was injured. But, however this may be, it was appellant's duty to exercise ordinary care to furnish appellee a reasonably safe place to work, and to that end to make proper inspection from time to time of the instrumentalities used in the conduct of its business and with which appellee would necessarily come in contact in the discharge of the duties required of him, and a failure to make such inspection would be negligence. That the evidence was sufficient to warrant the conclusion that appellant had failed before putting appellee to work on the morning he was injured to properly inspect and ascertain whether or not the arc wire which appellee was called on to handle was charged with electricity cannot well be denied. Appellant had no one in its employ charged with the duty of passing along and examining its wires for the purpose of detecting contacts or other trouble. The only means or method of inspection provided for that purpose, as stated in our conclusions of fact, was a device called "indicator" or "switchboard," which was located in the power house. This instrument was such that any ground or contact of the two systems of wires would be instantly indicated by it, and it was the duty of appellant's engineer at the power house to closely watch it, and report any contact or trouble indicated by it so the linemen would be warned of the danger arising therefrom. In reference to this matter, M. M. Arnold, city commissioner who had charge of the light plant department of the city, testified: "The only way that I or any one else connected with the city counsel could know of any trouble on the lines that needed attention was to receive that information from the engineer watching the switchboard at the power house, or by somebody out on the lines or street who saw the trouble and told or phoned us about it. There is a switchboard with a needle on it that indicates trouble on the lines, * * * and we have to rely largely on that switch-board to know when there is trouble or anything wrong with the lines, * * * and there is an engineer in charge out there at the power house, and it is his duty to watch this switchboard, and, when any trouble shows upon the board, his duty is to phone it to us at the office here in town. * * * Some of the men are out almost all the time during the daytime working somewhere on the lines and wires; and it would be exceedingly dangerous to have the arc circuit turned on in the daytime when the men are working on the wires, and the wires are supposed to be free of any current of electricity in the daytime, but frequently the arc wires will get crossed with the incandescent wires and form a connection, * * * and there are several ways by which the arc circuit may become connected with the incandescent circuit, * * * by the wires having too much slack in them and coming in contact with each other, and by the wind blowing them together; * * * and the very fact that there are so many different ways that the wires may get together and form a circuit and become grounded that we have to rely on the engineer at the power house to watch the switchboard and give us the information when the wires are grounded, or there is some trouble on the lines." This witness further said that it was not the duty of appellee to go out on the lines and inspect them to see if there were any of the wires crossed or other trouble. The evidence was sufficient to authorize a finding that the engineer neglected to watch the indicator on the morning appellee was hurt, and discover the contact which resulted in his injuries, and that such neglect was a breach of appellant's duty of inspection and negligence rendering it liable for the damages sustained by appellee as a consequence thereof.

[6] The exercise of reasonable care in the matter of inspection was a positive duty or obligation resting upon appellant, and appellant cannot escape liability for its nonperformance on the ground that it had been delegated to its engineer, Woodyard. The act or omission in regard to this duty on the part of Woodyard must be considered the act or omission of the appellant. The evidence was also sufficient to authorize a finding that if Woodyard had performed his duty and kept a careful and proper watch of the indicator at the power house, or had appellant otherwise, in the exercise of ordinary care, inspected its wires, their condition would have been discovered in time to have avoided the injury to appellee. That appellant recognized the sufficiency of the evidence to raise such an issue is evidenced by the fact that it asked a special charge submitting it to the jury. This charge was as follows: "If you believe from the evidence that the wires of the defendant had become crossed at some point in the city of

Greenville, and thereby the arc circuit wire upon which plaintiff was injured became charged with a current of electricity, and that plaintiff was thereby injured, before you can find a verdict for the plaintiff on such issue, it devolves upon him to establish by a preponderance of the evidence that the charging of said arc wire with a current of electricity was the result of the failure of defendant to exercise ordinary care. If, therefore, you believe that the exercise of ordinary care by defendant would not have detected that said arc circuit wire was charged with electricity in time to have warned plaintiff of such condition and have avoided the injury, you will return a verdict for defendant." The verdict of the jury necessarily embraces a finding against appellant upon this issue.

[7, 8] The court's charge on the measure of damages is complained of in appellant's third assignment of error, and the proposition urged is that "appellee not having alleged that he had any earning capacity at the time he was injured, or that his capacity to labor and earn money in the future had been diminished, or that he would suffer physical pain in the future, or that he had lost any time as a result of said injuries, and it not appearing that such results would naturally and necessarily flow from the character of injuries alleged by him, the charge in question was unauthorized and upon the weight of the evidence." The proposition correctly states the status of the pleadings in the particulars therein referred to, but the assignment of error will be overruled, because in our opinion the allegations omitted in view of the character of injuries sustained by appelles were not absolutely essential to recovery of the damages authorized by the court's charge. It is well established that all such damages as naturally and necessarily flow or result from injuries alleged are considered general damages and need not be specially pleaded. So where it may be said that, in the common experience of men, physical pain, loss of time, and diminished capacity to labor and earn money will naturally and necessarily result from the character of injuries shown to have been received, specific allegations of such results need not be made. The evidence was sufficient to show that such were the character of some of the injuries sustained by plaintiff. The proof shows that plaintiff was injured on the 5th day of April, 1911, and that this case was tried February 6, 1912; that plaintiff had been injured in different parts of his body by the shock received in coming in contact with the "live" wire; that among the injuries received was a serious and permanent injury to his lungs, which had caused them to pain him continuously since they were injured. He testified: "It seemed to me just like the current went through my lungs, and then seemed like they bursted and my breast caved in, and I could see and hear, but couldn't talk. I couldn't

say a word. My lungs hurt me as I am talking here now, and hurt me all the time if I talk much. While I am talking here now there is a throbbing in my breast, and I suffer when I am talking now. * * * I suffered with my lungs from the time I was hurt." Plaintiff further testified that he had suffered with hemorrhages from his lungs, and that since he was injured their condition was such that he could not do any hard work at all; that he was short of wind, and that, if he worked hard, had fever—was sick all the time, and had to lay around the house. Dr. J. H. French testified that he had been plaintiff's family physician for seven or eight years; that he was called to see him at the time he had the hemorrhage of the lungs; that he examined plaintiff, and found that he had an injury to the lungs. He further said: "I watched the condition of his lungs afterward, and it finally grew worse until he had a breaking down of the lungs and hemorrhages, and he has a cavity in his lungs now, * * * and that condition of his lungs is permanent, and cannot be cured, * * * and the probable outcome of the case as I have seen it and from the history I have is that within three or four years he will die with hemorrhages, and the condition he is now in he is not able to do manual labor."

[9-11] At the request of the plaintiff, the court charged the jury thus: "If you believe from the evidence in this case that at the time alleged defendant city was operating its light plant for pecuniary profit, that at said time it had permitted its arc wires to become charged with a dangerous current of electricity by coming in contact with a live primary wire, and if you further find that its engineer or superintendent in charge of its power plant failed to watch the indicator or device at said power plant provided for showing a connection or contact of said live primary wire with said arc wire or other wire or object, and if you find that the permitting of said wires to become so connected, if they did, or the failure of said engineer, if any, to watch and discover the said connection, if any, were either or both negligence, and that when plaintiff took hold of said arc wire, and as the proximate result of the negligence in the respect aforesaid, if any, he was injured in any or either of the respects as alleged by him, then you will find for the plaintiff." This charge is objected to on the grounds, as shown by appellant's several propositions, that it was not warranted by the pleadings; that there was no evidence tending to show that appellant was guilty of any negligence in permitting its arc wire to become charged with electricity, and because it authorized a recovery if appellant's engineer at its power plant negligently failed to watch the "indicator" or switchboard at said plant, and discover that its wires had become crossed, when the undisputed evidence showed that appellant's engineer, J. R. Woodyard, who was on duty at the power plant at the time appellee

was injured, was a fellow servant of appellee. We think neither of these objections is well taken. A failure to inspect was alleged and the charge was authorized under that allegation of the petition. And as heretofore said in discussing the second assignment of error appellant owed appellee the duty to exercise ordinary care to furnish him a reasonably safe place to work, and to that end to make proper inspection of the instrumentalities used in the conduct of its business, and with which appellee would necessarily come in contact in the discharge of the duties required of him, and a failure to make such inspection would be negligence. The method of inspection adopted by appellant to ascertain a contact of its wires, or "trouble," as it was called, was the "indicator" referred to in the charge here complained of, and the evidence was sufficient to justify a finding by the jury that appellant's servant whose duty it was failed to observe this "indicator" as he should have done on the morning appellee was injured to discover any contact of appellant's wires that might exist, and that such failure was a breach of its duty of inspection and such negligence proximately resulted in appellee's injuries as entitled him to recover. It is evident that the arc wire was charged with electricity on the occasion of appellee's injury by being in contact with some of appellant's wires that were kept charged during the daytime, and that such contact was indicated by the switchboard or indicator at the power house. It is also very clear that appellant's engineer at the power house failed to keep a proper watch of the indicator and to discover the contact, and that, as heretofore said, if a proper watch of the indicator had been maintained, the contact would probably have been ascertained in time to have reported it to appellee, and to have avoided the accident and injury to him. Under these circumstances, the jury might, as they doubtless did, conclude that appellant negligently permitted the arc wire which injured appellee to be charged with electricity at the time he received his injuries and was liable for the damages thereby sustained by him. It was not error to give this charge on the theory urged by appellant, that appellant's engineer Woodyard at the power house and the appellee were fellow servants. The general rule at common law that the master is not responsible for the negligence of one of his employés, even though he be a foreman or boss, resulting in the injury of a co-employé, unless the power to employ and discharge has been conferred upon such foreman or employé, has no application where the negligence complained of is the omission of a duty owed by the master to the injured employé, the performance of which he has intrusted or delegated to the negligent employé. As said in Young v. Hahn, 96 Tex. 101, 70 S. W. 950: "Such omission is the negligence of the master himself, the consequences of which he cannot avoid by the attempt to delegate his duty to one who has not discharged it." The duty of inspection is nondelegable, and, having been intrusted in this case to Woodyard, appellant is liable for his failure or negligent performance of it.

[12-14] This disposes of all of appellant's assignments complaining of the court's refusal to give certain requested charges based upon the theory that Woodyard and appellee were fellow servants, against it; and the charge requested to the effect that Burke and appellee were fellow servants, and that, if the jury believed that appellee was injured because of any negligent act or omission on the part of Burke, he could not recover, was properly refused. Burke was appellee's foreman with authority to control and direct him in the performance of his work and was present and directed him to go up the pole and remove the arc wire from the cross-arm at the time telling him the wire was "dead"; that is, not charged with electricity. In obedience to this direction, and not knowing that the wire was in fact charged with electricity, appellee attempted to do the work, and was injured. It is true Burke had no authority to employ and discharge any of appellant's employés, but it seems he had authority, and it was his duty to report any disobedience of his orders by appellee, and to cause him to be discharged. Appellee testified: "I was working under D. C. Burke, foreman of the electric light plant. I got my instructions from Mr. Burke. If I had not obeyed Mr. Burke's instructions, he would have turned me in to the city, and the city would have discharged me; that is, Mr. Burke would turn me in to Mr. M. M. Arnold, and they would have discharged me." Furthermore, while it is true that at common law the master ordinarily is not liable for the negligent act of a foreman or boss resulting proximately in injury to a fellow servant unless such foreman had the authority to employ and discharge, yet such rule, as we have seen, does not apply to an act of the foreman which from its nature must be regarded as the act of the master. Mosher Mfg. Co. v. Boyles, 132 S. W. 492; Bering Mfg. Co. v. Femelat, 35 Tex. Civ. App. 36, 79 S. W. 869. In the case of Mosher Mfg. Co. v. Boyles, supra, in which a writ of error was denied, this court said: "A foreman giving orders to those who have been placed by the master under him to work, and in reference to work under his control and supervision, necessarily speaks for the master, and in such case is a vice principal as to those over whom he is given such authority." Such was the authority given to and the position occupied by Burke. See, also, Southwestern States Portland Cement Co. v. Riser, 137 S. W. 1188. But, if it should be conceded that Burke and appellee were fellow servants, appellant suffered no material injury by the refusal of the special

charge for the reason that the issue of Burke's negligence in directing appellee to perform the work in which he was engaged at the time he was injured, was not submitted as a ground of recovery, and the failure to submit such issue was a sufficient withdrawal of it to avert any injury to appellant by the refusal of the special charge. Railway Co. v. Ames, supra.

[15] The ninth assignment of error is not briefed in accordance with the rules, and is not entitled to consideration. It complains of the court's refusal to give a special charge requested by appellant, instructing the jury, in effect, that, if appellant permitted the insulation on the arc wire to become defective and appellee knew or must necessarily have known in the discharge of his duties of such defect, he could not recover. This charge is not quoted in the statement made in support of the assignment, nor is the page of the transcript where it may be found given. If, however, the assignment should be considered, we are not prepared to say the court erred in refusing the requested charge. The evidence, it seems, did not call for such a charge.

Appellant presents several assignments of error challenging the correctness of the court's action in refusing certain special charges relating to the question of contributory negligence. Neither of these assignments discloses reversible error. The special charges refused were sufficiently covered by the court's general charge and special charges given at the instance of appellant. In the general charge the jury were instructed, in substance, that if the appellee knew that the arc wire was charged with electricity and the dangers thereof, or if such facts were open and patent to common observation, or that plaintiff must necessarily have known of such condition in the exercise of ordinary care in the discharge of his duty in doing the work in which he was engaged when injured and failed to exercise ordinary care for his own safety, or failed to exercise such care in the manner in which he was performing said work, or in the position assumed by him in doing the work, and such failure in either respect caused or contributed to bring about his injury, to find for the defendant. They were further instructed at the request of the appellant that if appellant negligently permitted the arc circuit wire upon which plaintiff was injured to become charged with electricity, and further believed from the evidence that the plaintiff's injury was caused by taking hold of said wire with his right hand and his body coming in contact with the metal mast arm, or other wires, and if they further believed from the evidence that a person of ordinary care and prudence, situated as plaintiff was, would not have permitted his body to come in contact with the metal mast arm, or other wires while holding the arc circuit wire, and if they fur-

ther believed that the plaintiff was guilty of negligence in so permitting his body to come in contact with said mast arm or other wire at the time he was holding to the arc wire, and further believed that such negligence, if any, caused or contributed to cause plaintiff's injury, then to return a verdict for the defendant.

[16] Again, it is well settled that, where a party asks more than one charge upon the same subject and the court selects and gives one of such charges, the party so requesting cannot complain of the refusal of the other charges. Railway Co. v. Haney, 94 S. W. 386; Railway Co. v. Ford, 118 S. W. 1137.

[17, 18] It is assigned that the court erred in overruling defendant's motion for a new trial, because the verdict of the jury is contrary to the law and the evidence, in that the evidence conclusively shows that the defendant is a municipal corporation, and was operating an electric lighting system for public purposes, and the plaintiff, as defendant's employé, was at the time injured in the service of the general public. This assignment will be overruled. While the appellant was operating its plant for the purpose of lighting its streets and to that extent for public purposes, yet we think the practically uncontroverted evidence shows that it was also operating its plant for the purpose of furnishing private lights to its citizens for which it charged and received compensation, and at a profit. A city as a rule is not liable for torts committed by its officers in the discharge of its duties in the interest of the public at large, but it is liable for their unlawful acts in discharging functions conferred for the peculiar advantage of its own inhabitants. White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909.

The assignment to the effect that the evidence disclosed no negligence on appellant's part in permitting its arc wire to be charged with electricity, and therefore the court erred in refusing appellant's special charge directing the jury to return a verdict in its favor has been disposed of against appellant by what we have said in discussing other assignments, and the assignment asserting that the evidence conclusively showed that the plaintiff was guilty of contributory negligence and the court should have granted a new trial, will be overruled. Whether the plaintiff was guilty of such contributory negligence as barred his right of recovery was a controverted issue, and properly submitted to the jury for their determination.

The length of this opinion forbids the taking up and discussion of the authorities cited by appellant in support of its contentions. We must be content with simply saying that the cases cited, and most strongly relied upon by appellant, are so materially different in the facts from the instant case

that they cannot be regarded as applicable and decisive of the latter.

Believing that none of appellant's assignments point out reversible error, the judgment of the court below is affirmed.